50 U.S. 637
 9 How. 637
 13 L.Ed. 290
 THE UNITED STATES, PLAINTIFFS IN ERROR,
v.
HORACE SOUTHMAYD AND STEPHEN C. SOUTHMAYD.
 January Term, 1850
 
 1
 THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Southern District of New York.
 
 
 2
 It involved the same question as the preceding case of Marriott v. Brune, viz. whether, in calculating the duties upon an importation of sugar, allowance should be made for leakage and drainage, with the additional fact in evidence, that the purchaser abroad takes into consideration the probable loss in fixing the price to be paid.
 
 
 3
 There was in this case only a single importation, which was made from Porto Rico, in September, 1849. The weight of the sugar, according to the invoice, was 191,710 pounds Spanish, and its actual weight at the time of entry 180,713 pounds, the difference being 10,997 pounds. The sugar being appraised, the appraisers added a quarter of a cent per pound to the invoice, and upon the invoice price, thus increased, the duty amounted to $2,441.70. The defendants paid only $2,350, being the duty less the loss in weight from drainage. For the difference, being $91.70, the United States brought suit against the importers. This course was pursued in order that the case might be brought to this court, under the act of 31st May, 1844 (5 Stat. at Large, 658).
 
 
 4
 In October, 1849, the cause came on for trial in the Circuit Court, when the jury, under the instructions of the court, which are set forth in the following bill of exceptions, found a verdict for the defendants.
 
 Bill of Exceptions.
 
 5
 The counsel for the plaintiffs, to maintain the issue upon their part, gave in evidence the following invoice and entry. (It is not necessary to recite them in extenso.)
 
 
 6
 The counsel for the defendants then and there admitted, that the defendants were partners, and imported and entered at the custom-house in the city of New York the merchandise contained in the said invoice and entry; that the invoice weight of the sugar, so imported and entered as aforesaid, was 191,710 pounds Spanish, and that its actual weight at the time of entry for the payment of duty was 180,713 pounds Spanish, and that the deficiency in the actual weight from the invoice weight was caused by drainage during the voyage of importation, and amounted to 10,997 pounds Spanish, and, at the rate at which the sugars in the invoice were appraised for the purposes of calculating the duty, was of the value of $335 in the currency of the invoice.
 
 
 7
 The counsel for the defendants also admitted, that the duty upon the invoice weight of sugar at the valuation of the appraisers amounted to $2,441.70, and that they had paid only the sum of $2,350.
 
 
 8
 The counsel for the plaintiffs then admitted that the plaintiffs' claim in this cause is only for the sum of $91.70, being the difference between the duty, if assessed according to the invoice weight, and the duty assessed upon the actual weight when entered.
 
 
 9
 The plaintiffs' counsel then called witnesses, who, being severally duly sworn, testified as follows:——
 
 
 10
 Isaac Phillips. I am an assistant appraiser in the New York custom-house, and am principally engaged upon West India goods, sugars and molasses. I have been such appraiser since November 30, 1846. The invoice now shown me is the original invoice of the importation of sugars in question in this case, and there is upon it a return in my handwriting showing that I added one quarter of a cent per pound to the invoice value. The duty was made up upon (1.) the invoice price; (2.) the charges of export duty and labor; (3.) usual commission; and (4.) the addition of a quarter of a cent a pound. This addition amounted to $479.28 in the currency of the invoice.
 
 
 11
 Moses Taylor. I am, and for more than twenty years past have been, an importing merchant in the city of New York, and am largely concerned in the importation of sugars, mostly from Havana. My own importations for the last two years were from thirty to forty millions of pounds. I imported about 11,000 hogsheads this year, and about 14,000 last year; the rest of my importation was in boxes. The hogsheads in which sugar is imported are well drove, but not tight, like liquor-casks. The export weight of sugar does not generally hold out on arrival here.
 
 
 12
 The deficiency is about five per cent. on an average on Muscovado sugars; by Muscovado we mean sugar not clayed or refined,—all sugars which come in hogsheads. This deficiency arises from drainage on the voyage. Never have been in the West India Islands. The fact of the loss by drainage is well known to the trade, and generally enters into the calculations of the importing merchant; it enters into his calculations as to the cost of the article here. I always make such calculation.
 
 
 13
 Thomas Tileston. I am an importing merchant in this city, and am largely concerned in the West India trade, and constantly receiving sugars. Muscovadoes fall short on arrival, from the export weights, from three to seven per cent.; in the extreme to ten per cent., and on an average four and a half or five per cent. This deficiency is caused by drainage. What passes off is syrup or molasses, and goes into the ship's hold and is a total loss. The casks are not made tight, because it is not necessary. Tight hogsheads, which would prevent the loss of weight by drainage, cost much more than those actually used. A rum-hogshead costs twice as much as the usual sugar-hogshead, and the rougher casks answer as well. If the syrup or molasses were kept in by tight hogsheads, it would settle in the lower part of the hogshead, and it would cost as much to extract it as it is worth. The effect of importing in tighter casks is not to improve the sugars. We all, who are familiar with the trade, understand that the sugars will fall short. We know when we buy that they will fall short in weight on arrival.
 
 
 14
 Henry A. Coit. I am an importer of this city engaged in commerce with the West Indies. I have resided many years in Cuba, and have seen sugars manufactured and packed. They are packed in white-oak casks, very strong, to resist pressure, but not so tight as to prevent drainage. The sugar is placed in the casks originally for the purpose of drainage. After it is boiled it is first placed in vats for cooling, where it remains three or four hours; it is then put into the hogsheads, and they are placed in the receiving-house, standing on their chines over a tank. The bottom of the hogshead is perforated with three or four holes, one half or three quarters of an inch in diameter, to allow free drainage, to let the molasses run into the tank. The next process is to put sugar-cane plugs into the holes, which stops the drainage partially but not entirely. The sugar remains thus in the receiving-house three weeks, sometimes longer, for the purpose of drainage; the casks are then filled up with sugar, the heads put on, the hoops driven, the casks turned upon their bilges, and rolled out for exportation; the holes are generally left with the same stoppage of sugarcane. The drainage continues until arrival, and after arrival, in New York, but not through the holes in the heads of the hogsheads. The per centage of loss is more or less, according to the perfection of the first drainage and the length of the voyage; the average is about five per cent. The fact that imported sugars do not hold out in weight is well known to the trade, and enters into the calculation of the importer.
 
 
 15
 Being cross-examined by defendants' counsel, the witness testified that the drainage after the hogsheads are rolled out is from the bilge between the staves, and from the lower heads, where the staves join the heads.
 
 
 16
 Royal Phelps. I am a merchant in New York in the West India trade, and deal in Porto Rico sugars. I have been in Porto Rico, and have seen sugars made there. There is no material difference between the mode of making sugar in Porto Rico and that in use in Cuba, as stated by the last witness. In Porto Rico they use red-oak staves for the hogsheads, and do not usually drain the sugar so long, I think, as three weeks. Porto Rico sugars do not usually hold out on arrival to the export weight; drainage on the voyage is the general cause. I have known invoices overrun in weight on arrival, but in such cases I supposed there was some error in making up the invoices. This loss is well known to the trade, and enters into the calculations of the merchant; the average deficiency is five per cent., perhaps more. Porto Rico usually loses more than Cuba sugar. I am of the firm of Maitland, Phelps, & Co.
 
 
 17
 The plaintiffs' counsel thereupon rested, and the defendants' counsel thereupon called witnesses, who, being sworn, severally testified as follows:——
 
 
 18
 Thomas Tileston, being further cross-examined by defendant's counsel, testified: We have imported sugar more or less for more than twenty-five years; have bought and have received consignments. Of late years we have imported several thousand hogsheads each year. I have usually found the holes in the casks filled with sugar-cane, with the hard part of the cane loosely put in and easily drawn out by a gimlet. The drainage on the voyage is from the bilge; it is not possible for it to drain from the heads, as the casks are stowed on the bilge. I think no party would be authorized to stow the casks on the chines; good and ordinary stowage would be on the bilge. The sugarcane is a soft substance, and is not put in with much care; it is to keep the sugar from coming out of the holes, and is sufficient for that purpose. It is my impression, from my experience, that the drainage of the sugar produces a grayish color. The grocers like a sugar of a bright color, with a large, clear, transparent grain. The draining detracts from the liveliness of the sugar; it produces a grayish color, which makes it of less value.
 
 
 19
 Being cross-examined by the plaintiffs' counsel, the witness testified: All Muscovado sugars diminish above five per cent. on the average. The sugars that drain most are more likely to turn gray, and thus be affected as to their value, than those that drain little. It is difficult, perhaps impossible, for any one purchasing sugar in Cuba to tell how it will turn out in New York, either in respect to drainage or color. In deciding upon the quality of sugars, the judgment of merchants is frequently baffled. I cannot say how large a proportion of sugar turns out grayish or sick. I can say, as a general thing, that draining on the voyage does not improve, but, if any thing, deteriorates the sugar. The sugar generally changes, but does not improve on the voyage. The samples imported in air-tight tin cases (whether rightly sampled in Cuba I cannot say) are better than the sugars in bulk. I have never been in the countries of export, nor seen sugar made, or before it was exported; I judge of the deterioration from what I know, as well as what is the general opinion.
 
 
 20
 John W. Downes. I am a master of a vessel. I have become acquainted with the manufacture of sugar in Porto Rico. I resided there seventeen years, and was connected with the manufacture of sugar. The process in Porto Rico varies but a trifle from that described by the witness, Mr. Coit. The sugar is from fifteen to thirty days purging in the receiving-house in the casks. The planters use rough-made casks, like rice tierces, only stronger, made of red-oak. The sugar, when placed in casks, is a sort of thick syrup. The holes are bored in the bottom head of the casks. When the drainage is completed, the casks are headed up and rolled out. The sellers never stop the holes up otherwise than as while draining with sugar-cane. Sometimes purchasers put in other plugs; I do always, but as a general rule it is not done. The casks are stowed on the bilge, and the drainage is entirely from the bilge, not through the holes.
 
 
 21
 Being cross-examined by the plaintiffs' counsel, the witness testified: The casks are stowed on the bilge because they make better stowage for the vessel, and in every way.
 
 
 22
 Being further examined by the counsel for defendants, the witness testified: I have seen sugar at Porto Rico, on the voyage, and here. Sugar is deteriorated on the voyage, but what effect drainage has on it in this respect I cannot say; whether it is the steam, want of air, bilge-water, drainage, or what injures it, but I know the fact that generally it is injured.
 
 
 23
 The defendants' counsel then introduced in evidence the following return of the weigher at the custom-house in New York, which was read to the court and jury.
 
 
 24
 
 Weighmaster's Return, Import per Brig John Colby, Ponce.
 
 
 
 25
 H. SOUTHMAYD & SONS.
 
 
 26
 Matilda, 76 hogsheads of sugar 90,916 10,909 80,007
 
 T 40 " " 47,808 5,736 42,072
 J 24 " " 30,820 3,698 27,122
 Quemada, 21 " " 26,340 3,160 20,575
 L M 10 " " 12,428 1,491 10,937
 
 27
 -------
 
 180,713
 
 28
 NEW YORK, September 29, 1849.
 
 
 29
 DARIUS FERRY,
 
 
 United States Weigher.
 
 
 30
 Invoice weight 191,710lbs.
 
 Actual weight in New York 180,713
 
 31
 --------
 
 
 32
 Difference 10,997lbs.
 
 
 33
 The defendants' counsel then offered to prove that the drawback upon re exportation was always calculated upon the actual weight of the sugar at the time of re exportation, as shown by the weigher's return. To this proof the plaintiffs' counsel objected, but the court overruled the objection, and admitted the testimony, and to such ruling the plaintiffs' counsel then and there excepted.
 
 
 34
 The defendants' counsel then proved that, upon re exportation of sugars, the drawback was calculated upon the actual weight, as shown by the weigher's return at the time of re exportation.
 
 
 35
 The defendants' counsel then rested; whereupon the court charged the jury, that the United States were not entitled to collect any more duties on the defendants' sugars than upon the appraised value per pound, calculated upon the quantity actually entered, as shown by the weigher's return, and that they should find a verdict for the defendants.
 
 
 36
 To this charge of his honor, the judge, and every part thereof, the plaintiffs' counsel then and there excepted.
 
 
 37
 Upon this exception the case came up to this court.
 
 
 38
 It was argued by Mr. Johnson (Attorney-General), for the plaintiffs in error, and Mr. Butler, for the defendants in error.
 
 
 39
 Mr. Johnson, for the plaintiffs in error, made the following points:——
 
 
 40
 1st. That the duties were properly assessed upon the amount of the invoice, under the eighth section of the Tariff Act of 1846.
 
 
 41
 2d. That by the sixteenth and seventeenth sections of the Tariff Act of 1842, which are in force, the decision of the appraisers is final, unless appealed from to two merchants, whose decision is also final. 5 Stat. at Large, 563, 564.
 
 
 42
 3d. That if it were not, the duties were properly assessed, the loss of the sugars from drainage entering into the estimation of their value at the time of purchase, and their cost to the importer at the time of landing in this country.
 
 
 43
 4th. That the evidence introduced to show that drawback upon re exportation was always calculated upon the actual weight of the sugar at the time of re exportation was improperly allowed.
 
 
 44
 Mr. Butler, for the defendants in error, made the following points:——
 
 
 45
 I. It is conclusively shown, by the facts given in evidence upon the trial, that the difference between the invoice weight at the port of shipment, and the actual weight in New York (10,997lbs. Spanish), was caused by drainage during the voyage of importation.
 
 
 46
 II. There being no question of fact to be submitted to the jury, the whole case resolved itself into a question of law, that is, the construction to be given to the proviso in the eighth section of the Tariff Act of July 30, 1846 (Acts and Resolutions 1st Sess. 29th Cong., authorized pamphlet ed., pp. 69, 70), declaring, 'that under no circumstances shall the duty be assessed upon an amount less than the invoice value, any law of Congress to the contrary notwithstanding.'
 
 
 47
 In the interpretation of this clause, it is submitted that the following rules should be observed:——
 
 
 48
 1st. If the words of the proviso be obsure, the intent of its makers is to be resorted to, in order to discover their meaning. 6 Bac. Abr., tit. Statute, I. § 5, pp. 384-386; Dwarris on Statutes, 688 -690.
 
 
 49
 2d. This intent is to be collected from the context; from the occasion, spirit, and reason of the law; from other acts in pari materia yet in force; and from the general course of legislation on the subject. 1 Bl. Com. 60, 61, 87, 88; 6 Bac. Abr., tit. Statute, I. §§ 2, 3, pp. 380, 382; 1 Kent's Com. pp. 461-464; The Sloop Elizabeth, 1 Paine, C. C. 11; Bend v. Hoyt, 13 Peters, 270-273; Lawrence v. Allen, 7 Howard, 793.
 
 
 50
 3d. While such a construction should be given to the proviso as will remedy the mischief which led to its enactment, the words should not be extended to embrace cases not within such mischief. Authorities above cited; Reniger v. Fogossa, Plowden, 1, 20; Zouch v. Stowell, Plowden, 365, 366; 2 Coke's Inst. 386; Williams v. Pritchard, 4 T. R. 2.
 
 
 51
 4th. Nor, if the words of the proviso can be otherwise satisfied, should they be so construed as to produce a consequence repugnant to reason or justice, even though such a consequence be within their literal meaning. Authorities above cited.
 
 
 52
 5th. Repeals by implication are not favored (6 Bac. Abr., tit. Statute, D. p. 373; 2 Dwarris, 673, 674); and therefore a construction which will involve such a repeal of provisions heretofore always treated as an essential part of the revenue laws, and not plainly repugnant to the new statute, should be avoided.
 
 
 53
 6th. A thing which, by the sound application of the foregoing rules, is found not to be within the intent of Congress, is not within the statute, even though embraced by its letter. The generality of the clause must, in this case, be so restrained in its interpretation as to conform to the intent of its framers. Authorities above cited.
 
 
 54
 7th. If, after applying all other rules, it be found that the clause equally admits of two constructions, the one imposing, and the other omitting to impose, a burden on the importer, the former of these constructions is to be preferred as the true one. Dwarris on Statutes, 743; Hubbard v. Johnston, 3 Taunt. 177, 220, 221; Adams v. Bancroft, 3 Sumner, 387; Bend v. Hoyt, 13 Peters, 270, 273, 278.
 
 
 55
 III. The claim of the United States, to collect duties on the invoice weight of the sugars in question, is founded on a construction of the proviso which makes it include the quantity as well as the cost or value of the goods mentioned in the invoice. If this be its true construction, the following results are unavoidable:——1st. The operation of the clause cannot be limited to Muscovado sugars, the article now in question, but must equally apply to all other imported articles, the cost or value of which is stated in the invoice in reference to, and by the computation of, the quantity of such article.
 
 
 56
 2d. The merchant will be compelled to pay duties on the quantity mentioned in his invoice, how much soever it may exceed the quantity actually imported, and no matter to what cause the difference may be referrible.
 
 
 57
 3d. As the eleventh section of the act of 1846 (pamphlet ed., p. 70) repeals all acts and parts of acts repugnant to its provisions, the construction claimed by the government, if adopted, must of necessity involve the repeal of all former laws making allowances for damage, deficiency, or loss occurring, by whatever cause, during the voyage of importation.
 
 
 58
 4th. It will also render nugatory many acts still required of the importer, and of the officers of the customs.
 
 
 59
 IV. The proviso in the eighth section of the Tariff Act of July 30th, 1846, under which the United States claim to collect duties on the invoice weight of the sugars in question, does not, on its fair and true construction, warrant such claim. It relates merely to the cost or value of the goods mentioned in the invoice; it leaves the quantity of such goods to be ascertained according to the pre existing laws; and in cases where quantity enters into the valuation, it forbids the assessment of the duty upon an amount less than that produced by calculating the true quantity of the goods actually imported, according to the price or value stated in the invoice; but it does not require or authorize the collection of duties on goods which, though described in the invoice, are never brought into the country.
 
 
 60
 V. The proof given on the trial, that the loss in weight on Muscovado sugars, by drainage during the voyage of importation, is well known to the importing merchants, and enters into their calculations, has no bearing whatever on the construction of the act of Congress, nor can it invalidate the construction given to it by the Circuit Court. Nor is the fact, in any other respect, material or relevant to the decision of this cause.
 
 
 61
 VI. The fact that the government appraisers, on their examination of the sugar, added to its cost or value one quarter of a cent per pound, amounting, on the invoice weight, to $479.28 in the currency of the invoice (Macuquino currency, 87 1/2 cents to the dollar, Invoice and Entry, Record, pp. 6, 7), and that this appraisement was submitted to by the defendants, has no bearing whatever on the questions presented by the record.
 
 
 62
 Mr. Justice WOODBURY delivered the opinion of the court.
 
 
 63
 This case was an importation of both sugar and molasses, under circumstances raising no question, except one, which has not been settled in the preceding case of Marriott v. Brune et al.
 
 
 64
 The additional point here arises on the evidence of several witnesses, that, when sugars of this kind are purchased abroad, the buyer usually takes into consideration in fixing the price, that the drainage or waste in weight will probably equal near five per cent. on the whole. It is argued, that the price abroad is, therefore, lower in this proportion on this account; and hence, that no deduction should be made here for what is taken into consideration there.
 
 
 65
 But the first answer to this position is, that if the price is fixed too low there, or lower than it should be on the quantity likely to be saved and to arrive here, it is the duty of the appraisers to raise the price; and it must be presumed they would raise it, if required by all the facts.
 
 
 66
 In the next place, this calculation by the merchant abroad in fixing the price is a mere speculative or commercial one, connected with profit and loss, and not with a view to the duties to be assessed here.
 
 
 67
 Again, the duty here is regulated by law, and not by any estimates of such a character by men of business; and by law it is imposed on the quantity entered here, and not the quantity shipped abroad; and on the true price abroad as estimated by the appraisers, and not necessarily as estimated by the owners.
 
 
 68
 Again, if the owner was benefited by this drainage in the improved quality of the sugars or molasses left, and to the extent of the loss in weight, there might be some equity in considering him liable for the weight abroad. But, as explained in the preceding case, such does not seem to be the current of the evidence.
 
 
 69
 There are cases, likewise, of imports here, made by the producers of the article abroad. In those, this supposed element in the price to prevent the justice of a reduction in the weight here could hardly exist, as there is no sale abroad; and this shows the incongruity and want of applicability of such a fact to constitute a rule, in any case, for estimating ad valorem duties.
 
 
 70
 There is another objection in the argument of this case, that some matters of fact were not submitted to the jury. But as no request was made on that point below, and the questions seem, by acquiescence on both sides, to have been ruled on the law only, so as to be reconsidered here, it is too late, we think, for objections like those.
 
 
 71
 Judgment affirmed.
 
 Order.
 
 72
 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of New York, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed.