## AMERICAN SUGAR-REFINING CO. v. UNITED STATES (two cases).

(Circuit Court of Appeals, Second Circuit. January 24, 1900.)

Nos. 34, 35.

CUSTOMS DUTIES—APPRAISAL—SUGARS — INCREASED VALUE FROM DRAINAGE DURING SHIPMENT.

In the appraisal for duty, under the tariff act of 1894, of Brazilian sugar bought and shipped when green, and which necessarily loses weight and increases in value per pound, by drainage during the voyage, such increase in value may properly be taken into account. The provision of section 19 of the customs administrative act of 1890, that, where merchandise is subject to an ad valorem duty, the duty shall be assessed upon its value in the principal markets of the country from whence imported, "and in the condition in which such merchandise is there bought and sold for exportation," is not intended to limit the appraiser to a condition which existed at the time of the purchase, but was immediately to become altered until a new condition and value were reached, but, as shown by the context, is intended to apply to the condition of preparedness for shipment of the merchandise when bought; it being further provided that to its value in the condition bought shall be added the cost of coverings, and all other costs, charges, and expenses incident to placing it in condition for shipment.

Appeals from the Circuit Court of the United States for the Southern District of New York.

John E. Parsons, for appellant.

Henry C. Platt, for the United States.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. These two appeals from the circuit court for the Southern district of New York involve the same question. In suit 2676 the American Sugar-Refining Company imported from Brazil, in March, 1897, certain sugars, by the John Swan, the Richmond, and the Bellaura, which were assessed for duty at 40 per cent. under the tariff act of August 28, 1894. In January, 1895, the same importer imported, also from Brazil, by the Cuvier, other sugar, which was assessed at the same rate of duty. Brazilian sugars, when bought in Brazil immediately after the manufacture, are wet, and lose weight upon the voyage to the port of entry, mainly by drainage, from 10 to 16 per cent., but they gain in value, because the dryer the sugar the higher its test, and there is a corresponding increase in value. This drainage is peculiar to Brazilian sugars, though it exists to some extent in sugars from Puerto Rico. "It has therefore become customary to insert in the contract of sale a guaranty that the loss in weight shall be a certain percentage, estimated by experts as the probable drainage of the particular cargo. If the loss is less than the stipulated percentage, the seller receives an additional payment in proportion; if it is greater, he makes a corresponding allowance from the purchase price." This is called the basis of settlement, and upon that ascertained amount of loss by drainage the appraisement was made in these cases. For example, in the case of the Bellaura the appraiser reported to the collector as follows: "The value of sugar per unit of quantity advanced from 7s. 2d. cwt. 86°, the market value when shipped, to 7s. 11½d. cwt. 86°, in the condition landed, owing to its increased value, due to drainage on the voyage of importation." The importers protested that, under the proper construction of the statute, the rate and amount of duty chargeable upon the merchandise could be only on its market value when shipped, and that duty upon "its increased value, due to drainage on the voyage of importation," was illegally exacted. The collector's construction of the statute was affirmed by the board of appraisers and by the circuit court.

The question in the case is whether this increase of value, on account of drainage during the voyage, is not illegal, because in violation of section 19 of the customs administrative act of June 10, 1890, which is as follows:

"Sec. 19. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in usual wholesale quantities, at the time of exportation to the United States, in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States, or consigned to the United States for sale including the value of all cartoons, cases, crates, boxes, sacks, and coverings of any kind, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready

for shipment to the United States, and if there be used for covering or holding imported merchandise, whether dutiable or free, any unusual article or form designed for use otherwise than in a bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subject if separately imported. That the words 'value' or 'actual market value' whenever used in this act or in any law relating to the appraisement of imported merchandise shall be construed to mean the actual market value or wholesale market price as defined in this section."

Prior to the passage of this act, the statutory provision on this subject had been the following (Rev. St. § 2906):

"When an ad valorem rate of duty is imposed on any imported merchandise, * * * the collector within whose district the same shall be imported or entered, shall cause the actual market value or wholesale price thereof, at the period of the exportation to the United States, in the principal markets of the country from which the same has been imported, to be appraised; and such appraised value shall be considered the value upon which duty shall be assessed."

The appellant insists that in the new section, in addition to the old requirement that the duty shall be assessed upon the actual market value or wholesale price in Brazil, the direction was carefully inserted that the value shall be upon the merchandise "in the condition in which the merchandise is there bought for exportation to the United States," and that this clause directly instructs the appraisers to assess the value upon the sugar in the condition of moisture in which it is bought.

It was well settled by early decisions that, if the quantity or weight stated in the invoice has been diminished by leakage or similar loss, the duty should be chargeable upon the quantity actually imported into this country (Marriott v. Brune, 9 How. 619, 13 L. Ed. 282; U. S. v. Southmayd, 9 How. 637, 13 L. Ed. 290); and the appellant asserts that, whether the diminished quantity of sugar received at the port of entry is dry or wet, its value must be ascertained by the wholesale market price of the sugar in the condition in which it was bought for exportation, and, if green sugar was bought, its enhanced value by drainage cannot be considered, and that there is no statutory authority for endeavoring to ascertain what the dried sugar would have cost in Brazil, if it had been bought in a dried state. The question is of the legality of the appraisal,—not of its accuracy, or its equity, but simply whether it is permitted by the statute,—and that depends upon the meaning of the words, "in the condition in which the merchandise is bought for exportation." The construction of the statute which would compel an ascertainment of value as the sugar was bought in Brazil when wet, though justified by the language of the statute if literally construed, is not sound. The intention of the statute was that the value of the imported merchandise shall be ascertained in accordance with the wholesale price of such merchandise in the principal markets from whence imported, in the condition in which such merchandise is there sold for exportation, whether packed or unpacked, specially prepared for a voyage or unprepared, and that the expenses incident to placing the merchandise in condition for shipment are to be taken into account. The statute was not looking to the peculiar circumstances incident to any article which necessarily

changed its value during a few weeks, wherever it was stored, and did not demand that the market price of sugar, if bought green, shall be the only standard for assessment, though it forthwith begins to lose in weight and to increase in value per pound. It is true that the word "condition" is broad enough to include any state or situation, but, as used in section 19, it was not intended to limit the appraiser to a condition which existed at the time of the purchase, but was immediately to become altered, and to change, until a new condition and value was reached. When the word is construed, the intent of the lawmaker, in the section as a whole, is to be regarded, which was to assess duty upon the value in the state or condition of the preparedness of the merchandise for shipment when sold, and to include the expenses of subsequent preparation, and thus to prescribe, with more particularity and accuracy than had been done in section 2906 of the Revised Statutes, the particulars which must enter into the assessment of value. The Brazilian sugar will, after its manufacture, surely lose weight by lapse of time, and it is sometimes stored in Brazil until it becomes dry. It is not material whether it becomes dry by subsequent storage and drainage in Brazil, or whether it is immediately shipped, and becomes dry upon the voyage. The loss in weight and the increase in value are necessary incidents to the sugar of Brazil, and it is dry sugar when it reaches New York. In this state of facts, it is incumbent upon the appraiser to ascertain the value of similar dry sugar in the markets of Brazil, and not to be limited to its invoice price or market value when wet. The decision of the circuit court is affirmed.