SCHROEDER & TREMAYNE, INC., ET AL. *v.* UNITED STATES

No. 7771.—

Entry No. 706364, etc.

(Decided January 12, 1950)

*John D. Rode* for the plaintiffs.

*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the defendant.

MOLLISON, Judge: The cases listed in schedule "A," hereto attached and made a part hereof, involve the value for duty purposes of two shipments of wool sponges exported from Cuba. The unit of value in which such merchandise is ordinarily bought and sold is the pound, and the sponges at bar were invoiced and entered at certain values per pound. There is no question but that during the voyage of importation the sponges lost weight due to the evaporation of moisture therefrom. This, it appears, is a usual occurrence in such shipments.

On appraisement, the appraiser adopted the invoiced and entered values as a basis, but added certain percentages, varying from 1.818 per centum to 8.642 per centum, to the values per pound on the theory that the sponges having decreased in weight by reason of evaporation of moisture during the voyage of importation, the value of the unit of quantity had correspondingly increased.

Duty is, of course, chargeable only on goods actually imported, and the importers' action in entering at the invoice-unit values had the effect of causing the total entered value to be less than the total invoiced value, while the appraiser's action had the effect of causing the total appraised value to equal the total invoiced value.

It was conceded by counsel for the plaintiffs that the invoiced total price was paid for the merchandise and that no claim was made and no allowance given by reason of the fact that a lesser amount in pounds of sponges was received than was invoiced and shipped. It is clear that although there was a loss in weight of the sponges there was no loss in the quality thereof. It is, nevertheless, the contention of the plaintiffs that the invoiced and entered unit values of the sponges represented the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402 (d)), of such merchandise, and that the foreign value as defined in section 402 (c) of the same act, as amended, was no higher. The only element of the appraised values challenged by the plaintiffs is the percentage addition in each case.

The defendant relies upon the presumption of correctness attaching to the appraised values, and denies that the plaintiffs established values for the sponges different from the appraised values.

It appears that when sponges are brought up from the ocean floor they are placed on strings by the fishermen and offered for sale in that fashion to buyers such as the exporter in these cases. The buyers purchase the strings of sponges, take them to their places of business or warehouses, and dry, sort, grade, trim, and pack them. Size, shape, texture, durability, and color are the factors of value, according to the record, and apparently sponges are offered for sale under descriptions which cover type, quality, and number of sponges to the pound; e. g., the first item on the invoice in reappraisement No. 159119–A is "Wools #1 F&C. 4/12," the "4/12" meaning that the sponges covered range from 4 to 12 to the pound. The sponges are packed in bales, and the unit of value, as has been said, is the pound.

It appears that when sponges are packed for shipment, due to conditions of humidity in the place of packing, and possibly to other factors, they do contain some moisture; that a certain amount of moisture, not reduced to exactness, but within a tolerance understood in the trade by experience, is desirable since dry sponges are more difficult to pack, and so that excess dryness, which results in brittleness, will not occur during the voyage of importation; that although some amount of moisture is recognized as desirable for the foregoing reasons, nevertheless, there is no recognized standard of moisture content of sponges offered for sale in Cuba; that in purchasing, nothing at all is said about moisture content; that purchases are made on invoice weights, and that normally there is a loss of weight on the voyage of importation; that the range of loss of weight in the cases at bar was not excessive; and that in case of excessive loss of weight a claim is sometimes made.

It also appears that from the standpoint of value in the American market the loss of weight during the voyage of importation is relatively unimportant, some, if not all, being recouped by permitting the sponges to absorb some moisture here, and that at any rate the value of the sponge in the American market does not lie in its weight, but in its size, shape, texture, durability, and color.

We are, however, not concerned with the value of sponges such as those at bar in the American market, we are concerned with their value in the foreign market, since both parties base their claims upon the existence of value therein. Before this court the plaintiffs have challenged only the item of the additions to the entered values made by the appraiser to compensate for the weight loss. This leaves unimpaired the presumption of correctness attaching to every other item of the appraisements, and the plaintiffs are entitled to avail

themselves of the benefit of such presumptions. *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. 60, 62, C. A. D. 371.

It was brought out at the trial that the examiner in the appraiser's office who passed the merchandise considered the entered unit value in each instance as "what would normally be an export value" of the merchandise in the condition as exported, and added to it a percentage to "bring it to the class of merchandise as imported into the United States" and that his action was approved by the appraiser. The propriety, in the sense of mechanics, of this method of procedure is not challenged, but the result is challenged, and I am satisfied that the challenge has been sustained by the plaintiffs. It has been established that in the foreign market sponges are offered for sale and sold by weight in units of pounds, and that in such offers and sales the moisture content is not a factor entering into the price. On its face, therefore, this evidence indicates that in the foreign market the price of such sponges did not increase by reason of loss in weight because of evaporation of moisture and refutes the basis upon which the percentage additions were made by the appraiser, and since no other item of the appraisements was challenged I conclude that, disregarding the percentage additions, the appraiser found that the entered values represented the export value of the merchandise pursuant to section 402 (d), *supra*.

While not precisely on all fours, nevertheless, in its essentials the situation in the case at bar is the same as that which was involved in the case of *Freedman & Slater, Inc.* v. *United States*, 23 Cust. Ct. 305, Reap. Dec. 7753, involving the value of hides which lost weight during the voyage of importation, and the rationale of that decision is equally applicable here.

Upon all of the evidence I find as facts:

1. That the merchandise involved in these appeals for reappraisement is wool sponges exported from Cuba in August 1943 and January 1946.

2. That at the time of exportation of the merchandise involved in the principal markets of Cuba such sponges were offered for sale and sold by weight in units of pounds, and that in such offers and sales the moisture content was not a factor entering into the price.

3. That at the time of exportation of the sponges in question the price at which such sponges were freely offered for sale for exportation to the United States to all purchasers in the principal markets of Cuba, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was the entered value in each instance.

4. That at the time of exportation of the sponges in question the price at which such sponges were freely offered for sale for home consumption in Cuba was the same as or lower than the said entered values.

I conclude as matters of law:

1. That the proper basis for determining the value of the sponges at bar is the export value, as defined in section 402 (d) of the Tariff Act of 1930.

2. That such export value in each instance is the entered value.

Judgment will be rendered accordingly.