(A. R. D. 16)

UNITED STATES *v.* { SCHROEDER & TREMAYNE, INC.
JAMES H. RHODES & Co.

Entry Nos. 706364 and 733814.

Second Division, Appellate Term

(Decided February 18, 1953)

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.
*John D. Rode* for the appellees.

Before LAWRENCE and FORD, Judges

FORD, Judge: The merchandise covered by the application for review listed above consists of sponges imported from Havana, Cuba, and entered at the port of New York. This application was filed under the provisions of 28 U. S. C. (1946 ed., Supp. V) section 2636 (a) and seeks a review of the decision and judgment of the trial court reported as *Schroeder & Tremayne, Inc., et al.* v. *United States*, 24 Cust. Ct. 505, Reap. Dec. 7771.

The merchandise consists of two shipments of sponges exported from Havana, Cuba, and entered at the port of New York. In reappraisement No. 159119–A, the sponges were entered at $9.30 per pound and at $8.80 per pound, less tare of 3 per centum and less cash discount of 2 per centum, and were "Appraised at $9.30 less 3% plus 8.642% per lb. Gr. Wgt. Pkd.," and "* * * at $8.80 less 3% plus 8.000% per lb. Gr. Wgt. Pkd.," respectively. In reappraisement No. 159168–A, the sponges were entered at $12 per pound, $11 per pound, $11 per pound, $10.30 per pound, and $8 per pound, less charges paid to the customhouse broker, less tare of 3 per centum and less a cash discount of 2 per centum, and were "Appraised at $12.00 less 3% less 2% plus 1.935% per lb. Gr. Wgt. Pkd.," "Appraised at $11.00 less 3% less 2% plus 2.173% per lb. Gr. Wgt. Pkd.," "Appraised at $11.00 less 3% less 2% plus 1.851% per lb. Gr. Wgt. Pkd.," "Appraised at $10.30 less 3% less 2% plus 4.615% per lb. Gr. Wgt. Pkd.," and "Appraised at $8.00 less 3% less 2%, plus 1.818% per lb. Gr. Wgt. Pkd.," respectively, less the proportionate part of a broker's fee of $15.10.

On the summary of examination and appraisement in each appeal, under the heading "Remarks," appears the following: "Sec. 14.3 (e) C. R. 43 applies." The above section of the Customs Regulations of 1943 reads as follows:

(e) When merchandise subject to an ad valorem rate of duty has decreased in weight by reason of evaporation or otherwise, and the value of the unit of quantity has correspondingly increased, such advance shall not be deemed an advance in value for the purpose of assessing additional duty.

Counsel for appellees herein, in his brief, states the question presented as follows:

Whether the percentage additions made by the appraiser to the per se values because of an alleged increase in value due to loss of moisture were correct.

Counsel for appellant, in its brief filed herein, states the contentions of the parties to be as follows:

The importer contended before the trial court that the sponges are dutiable on the basis of export value and that there is no higher foreign value; that the sponges did not increase in value by reason of loss of moisture; and that the percentage addition to the *per se* appraised values were erroneous; and that the *per se* entered values correctly represent the dutiable values of the imported sponges.

The Government contended that the importer has failed to meet its burden of proof by evidence showing the prices at which sponges such or similar to those imported herein were freely offered for sale or sold for home consumption or for export to the United States at the time of exportation thereof and in the condition in which such sponges were imported; that the provisions of section 14.3 (e), Customs Regulations of 1943 applies to the merchandise involved herein; and that the percentage additions thereunder have not been controverted.

That the appraised values represent the correct dutiable values of the imported sponges.

Section 500 of the Tariff Act of 1930, so far as here pertinent, is as follows:

SEC. 500.  DUTIES OF APPRAISING OFFICERS.

(a)  APPRAISER.—It shall be the duty of the appraiser under such rules and regulations as the Secretary of the Treasury may prescribe—

(1)  To appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

(2)  To ascertain the number of yards, parcels, or quantities of the merchandise ordered or designated for examination;

(3)  To ascertain whether the merchandise has been truly and correctly invoiced;

(4)  To describe the merchandise in order that the collector may determine the dutiable classification thereof; and

(5)  To report his decisions to the collector.

It is obvious from an examination of the entries and accompanying papers, as well as the entire record before us, that the amount added by the appraiser in both instances was the result of a mathematical calculation whereby he arrived at an amount based upon the weight which was lost by evaporation or otherwise during the voyage of importation.

The appraiser then added this amount to the value of the sponges in the condition as imported, thus bringing the value of the sponges back to their value based upon their original weight as exported. Since the only difference in the condition of the sponges at the dates of exportation and the dates of importation was the difference in their weight on those respective dates, it is clear that the action of the appraiser in this case was to find a value for the sponges in their condition as exported, and not in their condition as imported.

Counsel for appellant, in its brief filed herein, alleges that:

* * * The merchandise, in its condition as imported, is the same as the merchandise that was exported with the exception that it weighs less upon arrival than upon exportation, which is solely due to an evaporation of water.

\* \* \* \* \* \* \*

* * * The condition of the merchandise was different only in respect to the loss in weight due to evaporation of water. All other factors of value remained.

The appraiser must find a value for imported merchandise in its condition as imported on the date of exportation, and not for imported merchandise in its condition as exported on the date of exportation. *Worthington* v. *Robbins*, 139 U. S. 337; *Dwight* v. *Merritt*, 140 U. S. 213; *United States* v. *Southmayd*, 9 How. 637; and *Marriott* v. *Brune*, 9 How. 619.

Since this record establishes, and counsel for appellant agrees, that the appraiser, at least theoretically, restored the imported sponges to their condition as exported and then appraised them in that condition, this certainly cannot be held to be an appraisement of these sponges in their condition as imported on the dates of exportation as required by the authorities cited above. The action of the appraiser was, therefore, erroneous.

Examiner O'Connor testified that he determined by all reasonable ways and means the foreign value and the export value, whichever was higher, and that he found that the value he returned, the export value, was higher.

R. Q. Was your report, or appraisal, or action in all cases approved by your superiors, the assistant appraiser and the appraiser?—A. Yes.

Although it is shown by the record that the appraiser adopted the export value as the basis of his appraisement, which action carries with it a presumption that if there was a foreign value for these sponges, such value was not higher than the export value, counsel for appellant nevertheless contends that appellees were required to establish all the elements of both foreign and export value.

This contention on the part of counsel for appellant appears to completely overlook the following holding by the Court of Customs and Patent Appeals in *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. (Customs) 112, T. D. 49241, which is as follows:

When the appraisement first came before the trial court, it must be presumed that the appraisement and all items thereof constituted the true valuation of the merchandise and the burden rested upon the party who challenged its correctness or the correctness of any of its items to prove otherwise. Section 501, Tariff Act of 1930.

The only evidence as to this item of the allowance of 10 per centum discount which appears in the record is that of the witness Bunn who testified that in making the appraisement, he allowed 10 per centum for discount.

\* \* \* \* \* \* \*

The appraiser was advised that this pricelist was not used by the exporters, and the witness Bunn stated: "He makes his sales without any regard to the price lists: and I paid no attention to the price list, as it was apparently an obsolete price list." Again, the witness stated that he relied upon the language used by the Treasury attaché, that is: "Examination of numerous inland sales indicates that Susse & Groger do not adhere to the prices and discounts shown in their price list, Exhibit 'A.'"

It, therefore, appears that there is no evidence in the record as to the source from which the allowance of the item of 10 per centum discount was obtained, nor is anything offered by which the correctness of its allowance may be now attacked. Under the presumption of correctness established by said section 501, its correctness will be presumed. The Government had an opportunity to attack the item in the trial court. Having failed to do so, it is too late to do so now, in view of the condition of the record.

By their two appeals herein, appellees have attacked only the item of the appraisement represented by the addition of the percentages of value which the appraiser added by reason of loss in weight during the voyage of importation. Under the holding by the Court of Customs and Patent Appeals in *Freedman & Slater, supra*, and *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371, all other items of the appraisement are presumed to be correct and must be so accepted.

In accordance with their appeals, appellees in the trial court only offered evidence tending to establish that the item of percentages of value added by the appraiser was not any part of the true value of the merchandise, and that, therefore, such percentages of value were erroneously added by the appraiser. It is our view that the item of percentages of value added by the appraiser is not any part of the value of the merchandise and should not have been so added by the appraiser.

Counsel for appellant contends, however, that appellees failed to establish that sponges in the condition of those imported were freely offered for sale in the principal market of Havana, Cuba, for home consumption or for export to the United States.

This contention is contradicted by and is inconsistent with the appraisement herein upon which appellant relies. The appraisement being on the basis of export value, it presupposes the offer for sale in the foreign market of sponges such as or similar to those here involved for exportation to the United States. Since the appraisement was on the basis of export value, it must be presumed that the foreign value, if one existed, was not higher than the export value. In fact, that is exactly what witness O'Connor testified that he did find.

Since appellees herein challenged only the percentage advances in the appraisements, they were entitled to rely upon the presumption of correctness attaching to all other items of the appraisements, including the presumption that sponges, such as and similar to those imported, were freely offered for sale in the country of exportation

in accordance with the terms of section 402 of the Tariff Act of 1930. *United States* v. *Fritzsche Bros., Inc., supra.* Furthermore, the record shows that no allowance was made in the foreign market on account of moisture content, nor was there any standard moisture content, nor did the price in the foreign market of wet or moist sponges increase by reason of loss of weight due to evaporation or shrinkage.

In support of its contention, counsel for appellant herein cites and relies upon the case of *American Sugar Refining Company* v. *United States,* 181 U. S. 610, 45 L. ed. 1024. The facts in the *American Sugar Refining Company* case and in the instant case readily distinguish the two cases, as will be seen from the following quotation from *American Sugar Refining Company* case:

> The evidence in the case at bar is that the sugars had improved in quality,— becoming a higher grade of sugars, and necessarily, under the principle of the cited cases, it was that grade which was imported. Why, then, should they not have paid duty according to that grade? It was that grade, to use the language of *Marriott* v. *Brune,* which went "into the consumption of the country,"—it was that grade which went "into competition with our domestic manufactures."

In the instant case, the evidence is conclusive that the involved sponges were not improved or advanced in value by reason of the loss in weight during the voyage of importation. Therefore, the sponges in question had not improved in quality, becoming a higher grade of sponges by reason of the loss in weight during the voyage of importation. By reason of the different state of facts in the *American Sugar Refining Company* case, *supra,* and in the instant case, it thus appears that the *American Sugar Refining Company,* case, *supra,* supports the contention of the appellees herein. The above observation finds ample support in the further quotation from the *American Sugar Refining Company* case:

> * * * we may say, as was decided in *Marriott* v. *Brune,* 9 How. 619, 13 L. ed. 282, and *United States* v. *Southmayd,* 9 How. 637, 13 L. ed. 290, imported merchandise is that which arrives in this country, and it is upon that duties are to be paid. Those cases passed on imports of sugars which had lost weight by drainage on the voyages. The controversy was whether duty should be levied upon the weight of the sugars when shipped, or upon their weight when they arrived, which was less on account of drainage and waste to the extent of 5 per cent, than when they were shipped. The court sustained the latter view, saying: "The general principle applicable to such a case would seem to be that revenue should be collected only from the quantity or weight which arrives here. That is what is imported,—for nothing is imported until it comes within the limits of the port." The evidence in those cases also showed that the quality of the sugars was less on account of the drainage. "Nor is his sugar improved in quality," the court said, "by the drainage, so as to raise any equity against him (the importer) by it."

The case of *Sands & Leckie* v. *United States,* 10 Treas. Dec. 772, T. D. 26956, does not lend any support to the contention of appellant, as will be seen from the following quotation therefrom:

The testimony taken at the hearing does not shed much light upon the contention, for from parts of it it would appear that it was the value upon which the merchandise was assessed, rather than the method of ascertaining that value, that the importers complained of. This, however, would be a question that could be raised only in a reappraisement proceeding as provided for in section 13 of the act of June 10, 1890, but as the importers failed to pursue the remedy which that section provides, we think it fair to construe their contention to be that the foreign market value of the merchandise at the time of exportation was correct as stated in the invoice and that it was illegal for the appraising officer to change the value by reason of shrinkage in weight. The collector contends that it is the appraiser's duty to find the foreign market value at the date of exportation but in the condition in which the merchandise is imported, and that upon the value thus ascertained duty must be assessed and collected. With this view it is not the accuracy of the appraisement or reappraisement that is called in question, but its legality.

In the present case the legality of the action of the appraiser is not questioned by any one, and consequently that question is not before us for decision. The decision in the *Sands & Leckie* case, *supra*, seems to have been based upon this point entirely, for the court says: "We reach the conclusion, therefore, that the appraising officer, in taking into account the shrinkage of the hides, and their increase of value thereby, did not proceed upon a wrong principle in appraising them for duty purposes." From the above, it will be seen that the hides in the *Sands & Leckie* case, *supra*, did increase in value by reason of their shrinkage during the voyage of importation, while the contrary of that is true in the instant case. The evidence in this case definitely establishes that the sponges did not increase in value by reason of the shrinkage during the voyage of importation.

*Reiss* v. *Magone*, 39 Fed. 105, strongly supports the position of appellees herein, as shown by the following quotation from that decision:

The importer has to pay duty only upon what he imports. If his importation weighs 100 pounds when it leaves the other side, and 80 pounds only when it comes here, he pays on the 80 pounds which enters into the commerce of this country, and not upon the 100 pounds he bought on the other side. It may happen, however, that the shrinkage in weight has added a percentage of value, and that the 80 pounds which arrives is in its then condition worth more per pound in the markets of the country from which it came than the original 100 pounds was worth per pound. To illustrate, there may be a difference in the foreign market between 80 per cent. soap and 60 per cent. soap. If what reaches this country is in fact 80 per cent. soap, it should in fairness be appraised at its value as 80 per cent. soap in the foreign markets at the time of exportation, although the invoice may describe it as 60 per cent. soap at a lower value. But of course duty should be assessed only upon the amount actually imported. Such a method of appraisement seems to be in accordance with the provisions of the statute. In order, however, to warrant such an assessment of duty, the appraiser must first find that the 80 pounds imported was worth per pound such a sum as would warrant the particular amount of duty assessed. In this case there is no evidence that the appraiser has so found, and, on the contrary, the evidence is that the per pound value of the article imported was the same as that stated in the invoice, which would make the per pound value of the 80

pounds no greater than the per pound value of the 100 pounds. In view of the state of the evidence, therefore, I shall, as to the soap, instruct the jury that their verdict must be for the plaintiffs.

Counsel for appellant relies upon *United States* v. *Joseph Fischer et al.*, 32 C. C. P. A. (Customs) 62, C. A. D. 286, as supporting the practice with respect to section 14.3 of the Customs Regulations of 1943, and insists that this practice is fully warranted by the above decision. With reference to this phase of the controversy, the Court of Customs and Patent Appeals in *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371, said:

Appellee does not dispute that the practice with respect to article 14.3, *supra*, and sanctioned by this court in the case of *United States* v. *Joseph Fischer et al.*, 32 C. C. P. A. (Customs) 62, C. A. D. 286, is both reasonable and correct, but appellee contends, and properly in our opinion, that the facts in the instant case are such that that case does not apply here for the reason that it has been clearly established that there was no increase in value due to evaporation or otherwise.

In the instant case, as in the *Fritzsche* case, *supra*, it has been clearly established that there was no increase in value in the involved sponges due to evaporation or otherwise. To quote from the *Fritzsche* case, *supra*, "Therefore, the subsection of the Customs Regulation, above noted, is not applicable."

In passing, we wish to make an observation with reference to section 14.3 of the Customs Regulations of 1943, which counsel for both parties, and, to some extent, at least, the trial court, appear to have accepted as authority for the appraiser to make the percentage additions in this case, concerning which this litigation arose. We do not so construe this regulation. This regulation merely states that:

When merchandise subject to an ad valorem rate of duty has decreased in weight by reason of evaporation or otherwise, and the value of the unit of quantity has correspondingly increased, such advance shall not be deemed an advance in value for the purpose of assessing additional duty.

Certainly there is nothing in the quoted language which either directs or authorizes the appraiser to increase the value of merchandise because of a decrease in weight by reason of evaporation or otherwise. If and when the appraiser finds that the unit of quantity of imported merchandise has increased due to the fact that such merchandise has decreased in weight by reason of evaporation or otherwise, it is certainly his duty to advance or increase the unit of value of such merchandise, but his authority for so doing cannot be found in, or spelled out of, section 14.3 of the Customs Regulations of 1943. For such authority, the appraiser must look to, and be guided by, section 500 of the Tariff Act of 1930, which, under the heading "Duties of Appraising Officers," reads:

* * * It shall be the duty of the appraiser under such rules and regulations as the Secretary of the Treasury may prescribe—

(1) To appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

Section 489 of the Tariff Act of 1930 provides in plain, unequivocal language that:

If the final appraised value of any article of imported merchandise which is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof shall exceed the entered value, there shall be levied, collected, and paid, in addition to the duties imposed by law on such merchandise, an additional duty of 1 per centum of the total final appraised value thereof for each 1 per centum that such final appraised value exceeds the value declared in the entry.

It is clear from a reading of section 14.3 of the Customs Regulations of 1943 that it attempts to exempt a certain class of merchandise from the assessment of additional duties, which exemption is not contained in section 489, *supra*, and to this extent said section 14.3 is in contravention of said section 489. To the extent that section 14.3 of the Customs Regulations of 1943 attempts to exempt imported merchandise from the assessment of additional duties, which additional duties section 489 of the Tariff Act of 1930 declares shall be levied, collected, and paid, it would seem to be null and void and of no effect.

The above observations with reference to section 489 and section 500 of the Tariff Act of 1930, and section 14.3 (e) of the Customs Regulations of 1943, are made with full knowledge that the question was not specifically litigated in this case, but we do not wish to be understood as silently acquiescing in the seemingly accepted proposition that section 14.3 of the Customs Regulations of 1943 authorizes the appraiser to make percentage additions when he finds that imported merchandise has decreased in weight during the voyage of importation and the value unit of quantity has correspondingly increased, and that said section 14.3 was not in violation of section 489 of the Tariff Act of 1930. In fact, said section 14.3 appears to be directed to the collector of customs rather than to the appraiser of merchandise.

Based upon a consideration of the entire record before us, we find as facts:

1. That the merchandise involved in this application for review consists of sponges exported from Havana, Cuba, and entered at the port of New York.

2. That at the dates of exportation of the sponges in question, Havana, Cuba, was the principal market for the sale of such or similar sponges for home consumption and for exportation to the United States.

3. That at the dates of exportation of the sponges in question the price at which such or similar sponges were freely offered for sale and sold in the principal market of the country of exportation in the ordinary course of trade to all purchasers for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was the appraised values, less any amounts added by the appraiser because of loss of weight during the voyage of importation, and the foreign values were not higher.

4. That the value of such or similar sponges did not increase by reason of the loss in weight through evaporation or shrinkage during the voyage of importation.

We conclude as matter of law:

1. That the proper basis for determining the value of the sponges in question is export value.

2. That the export values of the sponges in question, as that value is defined in section 402 (d) of the Tariff Act of 1930, are as set out in finding of fact No. 3, and that the foreign values were not higher.

The judgment of the trial court is in all respects affirmed. Judgment will be rendered accordingly.