(Reap. Dec. 9656)

A. N. DERINGER, INC. *v.* UNITED STATES

Entry Nos. A-4033; A-4058; A-3770; A-3960.

(Decided April 7, 1960)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

DONLON, Judge: Four appeals to reappraisement have been consolidated for purposes of trial. The merchandise consists of steam traps, which were exported from Canada. Plaintiff abandoned its appeals as to all the imported steam traps except only those that were enumerated by statement in open court. Such steam traps are identified in the invoices (which are of record) either by the letter "S" or the letter "P." These steam traps, as to which the appeals are now prosecuted, are the invoice items that are set forth in the annexed schedule A, which is made a part of this decision and the accompanying judgment order.

There being no evidence of record to overcome the presumption, as to all other merchandise, that the appraiser's valuations are correct, the appraisements will be affirmed as to such merchandise.

The official papers in the four appeals are in evidence.

Defendant concedes that these steam traps were valued by the appraiser on the basis of cost of production. Plaintiff agrees that cost of production is the proper basis of appraisement, and in its suit controverts only the computation of cost of production values, as determined by the appraiser. This issue is before us on plaintiff's appeals. The appraiser's computation of cost of production is the material issue that plaintiff has raised.

Defendant did not file any appeal to reappraisement as to the merchandise of these appeals, and is, therefore, not in position to controvert the actions and decisions of the appraiser.

The first issue to be resolved is whether plaintiff has sufficiently overcome the presumption of correctness that attaches to the appraiser's action. Plaintiff argues that it has done so. Defendant argues that it has not. In this argument defendant relies, first, and it would appear chiefly, on an alleged failure of plaintiff, notwithstanding its acceptance of the appraiser's *basis* of valuation, to negative, by adequate proofs, the existence of a foreign or export or United States value, for both such and similar merchandise, as a condition precedent to upholding appraisement on the basis of cost of production.

That plaintiffs have a heavy burden of proof in appeals to reappraisement, is undoubted. It badly serves the efficient and orderly disposition of judicial work, however, for the Government to seek to enlarge this burden beyond the scope of issues in litigation in an appeal. As defendant correctly observes in its brief (p. 9), citing as authority *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495, the plaintiff's burden is to prove the action of the appraiser erroneous and to establish some other dutiable value as the proper one; and, to do this, plaintiff must meet every material issue that is *involved in the case*. What are the material issues involved in this case?

In the *Brooks* case, *supra*, the material issue was not whether appraisement should be at foreign or export value, for plaintiff there contended that these values were the same. What plaintiff litigated as the material issue in the *Brooks* case, was the amount of value. Our appeals court found that plaintiff had not borne its burden of proving what was the usual wholesale quantity in which the merchandise was offered, that being an element of valuation. There is no suggestion in the *Brooks* litigation that negativing any kind of value was a material issue. The holding of the appeals court is adequately summarized in a sentence in the final paragraph of its opinion in the *Brooks* case:

. . . The appellate division was, in our opinion, correct in holding that the evidence is insufficient to establish the usual wholesale quantities and that appellant has *therefore* failed to establish all the elements necessary for the court below to make a valid appraisement. [P. 51; emphasis supplied.]

In support of its argument that a plaintiff who does not challenge the *basis* of appraisement, but who does challenge the *computation* and that only, must, nevertheless, meet, as a material issue, those factors of appraisement which have not been controverted, defendant cites 13 cases. Not one of the cited cases holds this proposition for which defendant argues.

In *United States* v. *Alfred Dunhill of London, Inc.*, 32 C.C.P.A. (Customs) 187, C.A.D. 305, there was no material issue as to the

*basis* of appraisement. The basis of the appraiser's valuation was cost of production, as it is here. The sole controversy in the *Dunhill* case was whether an English purchase tax was or was not an item entering into the computation of cost of production. That was the material issue in the *Dunhill* case.

In *United States* v. *Thomas & Co.*, 21 C.C.P.A. (Customs) 254, the basis of valuation found by the appraiser was United States value. The importer claimed appraisement on the basis of foreign or export value. Therefore, basis was a material issue in the *Thomas* case. The appeals court affirmed the finding of the appellate division that the importer had met its burden by proving what the foreign value of similar merchandise was.

In *United States* v. *The American Bluefriesveem, Inc.*, 22 C.C.P.A. (Customs) 67, the merchandise was valued by the appraiser at United States value. This basis of appraisement was challenged by the importer. Basis, therefore, was a material issue in the case. As in the *Thomas* case, *supra*, there were sufficient proofs of the values (foreign or export, as to different articles) of similar merchandise.

In *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, the material issue, likewise, was as to whether certain merchandise was similar, in the statutory sense. While disassociating itself from the concept of similarity that had been expressed by the appellate division, the appeals court found that this error of definition was harmless, on the facts of record before it.

In *T. W. Holt & Co.* v. *United States*, 23 Cust. Ct. 243, Reap. Dec. 7714, the appraiser used foreign value. The importer, claiming export value instead, made the basis of appraisement a material issue, in which negativing the appraiser's foreign value, by sufficient proofs, was obligatory.

In *Japan Import Co.* v. *United States*, 24 C.C.P.A. (Customs) 167, appraisal was on the basis of the American selling price of a domestic article, pursuant to Presidential proclamation. The importer contended that the Presidential proclamation was unconstitutional, as an unlawful delegation by Congress of the taxing power; that there was no like or similar domestic (American) article; and that appraisement should be on the basis of foreign value. These were all material issues, because the importer made them so by its controversy in the litigation. Our appeals court held against the importer on the constitutional issue; and, as to foreign value, found that "there is substantial evidence in the record in support of the finding that the imported articles and the domestic articles were like or similar." (P. 177.) Accordingly, the importer had not negatived the *basis* of appraisement, which it had made a material issue in the *Japan Import* case.

In *United States* v. *International Forwarding Co., Inc.*, 27 C.C.P.A. (Customs) 21, C.A.D. 56, the importer claimed export value as the basis of appraisement, instead of foreign value which the appraiser had used. Thus, *basis* was a material issue in that case.

In *Meadows, Wye & Co. (Inc.)* v. *United States*, 17 C.C.P.A. (Customs) 36, the decision turned on the burden of proof plaintiff has with respect to goods that were entered prior to enactment of the Tariff Act of 1930. Under the 1922 law, the trial of an appeal to reappraisement was a proceeding *de novo*, and no presumption of correctness attended the decision of the appraiser. As the court pointed out, the question of whether the value returned by the appraiser is the proper dutiable value, was not the real issue under the 1922 law. As a result of the 1930 statutory provision which attaches a presumption of correctness to the value the appraiser finds, appraisement is no longer a proceeding *de novo*. Section 501, Tariff Act of 1930, now section 2633, title 28, United States Code.

*Chas. A. Johnson & Co.* v. *United States*, 17 C.C.P.A. (Customs) 107, is also a case that arose before the enactment of the presumption statute in 1930. Therefore, it construes law which is no longer in effect.

*United States* v. *T. D. Downing Co.*, 20 C.C.P.A. (Customs) 251, illustrates the exasperating, footless, and costly delays in litigation that have often resulted from Government failure to inform the trial judge what basis of valuation the appraiser used. The appeals court, given insight into this matter that had been denied the trial judge, sent the *Downing* case back for development of further evidence.

In *F. B. Vandegrift & Co.* v. *United States*, 18 C.C.P.A. (Customs) 356, the case went up and down the litigation ladder more than once. Plaintiff claimed a foreign value lower than the appraised value, but failed to negative a higher export value. As is well known, appraisement is at the higher of foreign and export values.

The *Brooks* case, *supra*, has already been discussed.

The 13th case defendant cites in its brief, on this point, is *Kobe Import Co.* v. *United States*, 43 C.C.P.A. (Customs) 136, C.A.D. 620. The issue there was whether the merchandise was exported from China or from Japan, an issue which is not present in this appeal. Canada is undoubtedly the country of export of this merchandise.

I have analyzed thus extensively the authorities which defendant has cited in its brief, in order to point up the speciousness of argument which relies on decisions handed down in significantly unlike situations.

I find that the burden of plaintiff is to meet every material issue *in this case*. I find that the material issue in this case which plaintiff has to meet is to prove the statutory components of cost of production.

There is a considerable body of precedent for the proposition that every element of value, as found by the appraiser, is presumed to be correct, unless and until plaintiff has overcome that presumption by competent proofs.   The statute provides:

The value found by the appraiser shall be presumed to be the value of the merchandise.   The burden shall rest upon the party who challenges its correctness to prove otherwise.   [Section 2633, Title 28, U.S. Code.]

In *United States* v. *Schroeder & Tremayne, Inc., et al.*, 41 C.C.P.A. (Customs) 243, C.A.D. 558, the Government argued substantially the same point that it argues here.   The issue there litigated was whether certain percentage additions made by the appraiser to export value, because of an alleged increase in value due to a loss of moisture, were correct.   The Government argued that the plaintiffs' burden went beyond this; that, although plaintiffs did not controvert export value as the *basis* of valuation, it was, nevertheless, necessary for plaintiffs to establish by competent proofs all elements both of foreign and of export value.   The second division of this court, sitting as an appellate division, disposed of this argument, in an opinion by Judge Ford, as follows:

In accordance with their appeals, appellees in the trial court only offered evidence tending to establish that the item of percentages of value added by the appraiser was not any part of the true value of the merchandise, and that, therefore, such percentages of value were erroneously added by the appraiser.   It is our view that the item of percentages of value added by the appraiser is not any part of the value of the merchandise and should not have been so added by the appraiser.

Counsel for appellant contends, however, that appellees failed to establish that sponges in the condition of those imported were freely offered for sale in the principal market of Havana, Cuba, for home consumption or for export to the United States.

This contention is contradicted by and is inconsistent with the appraisement herein upon which appellant relies.   The appraisement being on the basis of export value, it presupposes the offer for sale in the foreign market of sponges such as or similar to those here involved for exportation to the United States.   Since the appraisement was on the basis of export value, it must be presumed that the foreign value, if one existed, was not higher than the export value. (*Id.* v. *Id.*, 30 Cust. Ct. 590, at p. 594; A.R.D. 16.)

Our appeals court affirmed, saying that "the challenging of one item of an appraisement does not destroy the presumption of correctness attaching to all the other items of the appraisement."   (P. 246.)

To like effect are the decisions in *Golding Bros. Co., Inc.* v. *United States*, 21 C.C.P.A. (Customs) 395; *Stone & Downer Co.* v. *United States*, 21 C.C.P.A. (Customs) 479; *Kenneth Kittleson* v. *United States*, 40 C.C.P.A. (Customs) 85, C.A.D. 502; *H. S. Dorf & Co., Inc., et al.* v. *United States*, 41 C.C.P.A. (Customs) 183, C.A.D. 548.

Pointing up the difference in reappraisement trial procedure effected by the presumption section of the 1930 act, our appeals court, in the *Golding* case, *supra*, said:

The Tariff Act of 1930, however, contains as a part of section 501 thereof, a provision, new to customs legislation, which reads:

* * * The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

One effect of this new provision is to change materially the situation relating to appeals to reappraisement, in that, under the Tariff Act of 1922, the proceedings before a single judge of the United States Customs Court, sitting in reappraisement, were proceedings *de novo*, with no presumption of the correctness of the local appraiser's appraisement to be overcome, whereas under the Tariff Act of 1930 there is a presumption of correctness and the burden of overcoming this presumption is cast upon the appealing party.

In the instant case, therefore, when the local appraiser rejected the value at which the importer entered the merchandise, and held the United States value to be the dutiable value, the presumption attached that he had found neither foreign nor export value to be satisfactorily ascertainable and also that he had found United States value to be satisfactorily ascertainable.

In other words, the presumption of correctness legally implies that the local appraiser made findings as to all the elements requisite to determine that United States value was the correct dutiable value. . . . (Pp. 396, 397.)

To paraphrase the opinion of our appeals court, *supra*, the presumption of correctness here legally implies that the appraiser made findings as to all the elements requisite to determine that cost of production value was the correct dutiable value of this merchandise.

It may be observed that plaintiff here has adduced the testimony of Velan's sales engineer (a) that offerings of Velan steam traps in Canada, both for domestic consumption and for export to the United States, were restricted, that is, made to selected distributors only; (b) that there were no offerings in wholesale quantities in the United States; and (c) that there was no freely offered merchandise that was similar to this merchandise, because the Velan steam traps were unique. On the law applicable to this case, plaintiff was not required to prove these facts, but it has done so.

The issue for decision, then, is whether plaintiff has by competent proofs (1) shown that the appraiser's computation of cost of production values was erroneous and (2) established other cost of production values for the merchandise. I find that plaintiff has borne its burden of proof, and that defendant's evidence in rebuttal has not impaired the case which plaintiff has made.

In order to obviate confusion, it is noted that plaintiff is a customs broker and that the exporter of the merchandise from Canada was Velan Engineering, Ltd., of Montreal, or its predecessor. Velan

was incorporated January 1, 1953. Prior thereto, during times relevant to this litigation, the business was carried on as a "sole ownership." For brevity, the exporter (according to date, either the corporation or the "sole ownership") is referred to as Velan. Velan sold steam traps both in Canada and in the United States.

Steam traps are described as a necessary device used in industrial, marine, power, chemical and petroleum installations, and in installations of the United States Navy and Canadian Navy, as well as by other governmental departments in both countries, in connection with the use of steam. The function of the steam trap is to discharge condensed steam out of the system, while retaining live steam in the system. Retention of the condensate would result in an inefficient operation. The steam trap is an automatic trap, which removes the condensate and at the same time retains the useful, or live, steam. The Velan steam trap operates on a different principle from the ordinary steam trap.

Plaintiff adduced the testimony of two witnesses. The first was Mr. Donald Ernest Tomalty, of Montreal, who said that, since the end of 1951, he has been general sales manager of Velan and who before that was a sales engineer for Velan, doing promotional selling. The other witness introduced by plaintiff was Mr. Henry Lonn, also of Montreal, who said he has been a chartered accountant since 1942.

Mr. Tomalty is an engineer. He described the operation of the Velan steam trap, and also identified the several trap models which are the subject of this litigation and which are in evidence. He said that, to his knowledge, in the years of export of this merchandise there were no similar steam traps on the market in the United States or Canada; that the operating principle of the Velan steam trap is unique; that a unique feature was an integral strainer that had a bimetallic segment with a check valve, which could vent air through a common orifice with the condensate; that the trap could be installed in any position, and either outside or inside, without the insulation that most other traps require; that the Velan trap has a full scale operating range for pressures of zero pounds per square inch up to 1,500 pounds per square inch. "These", said Mr. Tomalty, "are a few of the unique features which I believe will be of interest." (R. 22.)

This resumé of Mr. Tomalty's description of the Velan steam traps is set down as affording a useful background for consideration of the value testimony.

The appraised values of the several articles of merchandise and the values for which plaintiff contends are, respectively, as follows:

| Reap. | Invoice | | Date | Item | Appraised value | Claimed value |
|---|---|---|---|---|---|---|
| 296976–A | Commercial | (1) | 12/27/51 | S | $18. 25 | $10. 97 |
| " | " | (2) | " | S | 18. 25 | 10. 97 |
| 296977–A | " | (2) | 12/28/51 | S | 21. 00 | 10. 97 |
| 58/5591 | Proforma | (1) | 12/23/52 | P | 10. 95 | 6. 74 |
| " | " | (1) | " | S | 18. 25 | 8. 31 |
| 58/12095 | Commercial | (1) | 12/31/53 | P | 10. 30 | 8. 27 |
| " | " | (1) | " | S. ½" | 18. 60 | 9. 32 |
| " | " | (1) | " | S. 1" | 16. 50 | 9. 32 |
| " | " | (1) | " | S. ¾" | 16. 50 | 9. 32 |
| " | Commercial | (2) | 12/30/53 | P. Junior | 9. 80 | 7. 40 |
| " | Commercial | (4) | 12/30/53 | P. Junior | 10. 30 | 7. 40 |

Analysis of a record running to 167 pages discloses that the nub of the controversy is that defendant considers a profit component at the statutory minimum of 8 per centum is too low to reflect accurately the statutory cost of production values of these steam traps. This view of the profit component runs through much of the trial record. I shall discuss it later. It is mentioned now only to indicate, as I proceed to weigh the evidence bearing on value, that all testimony and documentary exhibits have been scrutinized not only as to the facts they assay to prove, but also for credibility.

After testifying as to the components of cost of production value for the "S" model steam trap, without glass cover, of reappraisement 296976–A, invoice of December 27, 1951, with particulars given as to the method of computing each component, witness Lonn testified that if he were asked like questions with respect to each item of merchandise here in litigation, his answers would establish cost of production value components for the several items of merchandise as follows:

| Reap. | Item | Materials & Labor | General Expenses | Packing | Profit |
|---|---|---|---|---|---|
| 296976–A | S (solid cover) | $7. 52 | $2. 55 | $0. 09 | 4½% |
| 296977–A | S (solid cover) | 7. 52 | 2. 55 | 0. 09 | 4½% |
| R58/5591 | P Junior (glass cover) | 4. 41 | 1. 78 | 0. 05 | none |
| " | S (glass cover) | 5. 44 | 2. 17 | 0. 09 | none |
| R58/12095 | P Junior (glass cover) | 4. 41 | 3. 20 | 0. 05 | 2% |
| " | S (solid cover) | 4. 95 | 3. 60 | 0. 09 | 2% |
| " | P Junior (solid cover) | 3. 96 | 2. 85 | 0. 05 | 2% |

Mr. Lonn said that he computed costs of materials and labor per trap for a period of about an hour preceding the time of exportation, since it took about that time to produce a trap, and that general expenses per trap were computed from the financial statements as at the end of the year. He also computed from "actual books and records and profit and loss statements" (R. 65) what percentage of the sum

of materials and labor, plus general expenses or overhead, the profit per trap was.

On cross-examination of witness Lonn, defendant introduced as exhibits for identification (and, subsequently, as exhibits of record) certain financial statements, and also the report of a customs agent, named Fawcett. One such exhibit consisted of purported copies of two letters from Velan (one signed by Mr. Velan and one by Mr. Lonn), addressed to the United States Navy Purchasing Office in New York and dated, respectively, January 26, 1954, and January 29, 1954. (Exhibit C.) Attached to these copies was a copy headed "Interim Profit & Loss Statement, January 1st, 1953—December 31st, 1953."

Copies are not the best evidence of the originals. Defendant is the United States, and presumably correspondence addressed to the United States Navy Purchasing Office is in possession of the United States, unless it has been destroyed. While counsel for defendant asserted the inability of his client to produce the originals, as the basis on which he offered the copies, the usual ground of the offer of a copy certainly was not laid. However, inasmuch as witness Lonn identified his signature on the copy letter and testified that the copy statement was the enclosure, or balance sheet, which he sent with the letter, the copies were received in evidence for what they might be worth.

Questioned by defendant's counsel as to the 1953 balance sheet given by Velan to the Navy, Mr. Lonn pointed out that it was an interim statement and that it was plainly labeled as such; that the books had not been closed for 1953 at the time when this statement was prepared in January 1954; that the accompanying letter to the Navy explained this and certain differences that would appear; and also (R. 95) that, before the books were closed for 1953, some December shipments, as to which invoices had not been received by customers by the year end, were left in inventory instead of being taken as 1953 accounts.

Certain of defendant's exhibits are documents so badly blurred as to be illegible. There is a tattered piece of paper (exhibit E), which is a photostatic copy of an unsigned columnar statement of figures. Defendant introduced this as a comparison, that was made by witness Lonn for a customs agent, between the interim 1953 statement and the final statement taken from the books after they were closed for that year. Mr. Lonn identified it as a copy of his statement, prepared for the customs agent, reconciling the interim and final statements.

From exhibit E, it appears that a substantial part of the difference in net profit, as between the figures in the interim report and those in the final report, is accounted for by a difference in the sales figures. This is $77,578.90. As earlier stated, witness Lonn testified that shipments of merchandise made shortly before the year end, the invoices

for which customers had not received by the end of the year, were left in 1953 closing inventory when the books were closed and not taken as accounts receivable for that year. Such accounting procedure is not unusual, and neither on cross-examination of plaintiff's witness Lonn, nor by its own witness Vanderbeek, has defendant shown that this method of treating end of the year shipments is either inaccurate or improper.

The remainder of the difference in the two statements as to net profits, $15,696.35, derives from differences in a number of expense items. There are some items of expense which did not appear at all in the interim account. Customs duty is an example. In the final accounts, this is shown as $26,785.79. Witness Lonn explained that the United States Navy was not interested in customs duty, and that was why it was not reflected in the figures that were sent to the Navy. Similarly, there is an item for American shipping expenses of $6,300 which, for the same reason, did not appear in the Navy figures. It seems unnecessary to detail all of these differences minutely. They are set forth in exhibit E. Some are by way of increase in expense items when the accounts were closed; some are by way of decrease in expense items when the accounts were closed; and some (for reasons such as witness Lonn stated) were not shown at all in the figures given to the Navy.

If ethical or other questions are involved in the interim statement sent to the Navy (and the court is not advised of any), they are, on the facts here of record, questions extraneous to customs valuation. That is the issue the court is here required to resolve. Plaintiff has made at least a *prima facie* case for the values for which it contends, by proof of values determined on the basis of actual costs of production during a period, in each instance, of approximately 1 hour before the time of exportation, plus the statutory minimum allowance for profit.

In rebuttal, defendant put on the witness stand a customs examiner now stationed at Rouses Point, but formerly a customs agent stationed at Montreal, Mr. Arthur H. Vanderbeek. While he was stationed in Montreal, Mr. Vanderbeek had assisted in the examination there into the question of valuation of the Velan steam traps. He was not in charge of that examination, and his knowledge of it was, therefore, deficient in several respects.

However, after Mr. Vanderbeek was transferred to Rouses Point, he was given the task of advising the appraiser as to the basis for appraisement of the Velan steam traps and the values determined on that basis. (R. 150.) He advised the appraiser that cost of production was the proper basis of appraisement, and, in his testimony, he detailed his method of computing the cost of production values which he advised. In brief, he started from sales prices and worked back

to estimated costs of materials and labor, general expense, packaging, and then he added 8 per centum for profit. (R. 151.) He used the same profit factor for each of the 3 years 1951, 1952, and 1953.

He could not answer as to whether the actual cost of the materials that went into the traps in Canada was checked (R. 156), but, in making his computation, he did not do so. (R. 162.) The reason witness Vanderbeek worked backwards from selling price to arrive at cost of production was, so he said, because from the figures and reports available he "could never make it add up to a reasonable selling price." (R. 159.) He said that it was his idea that cost of production should be near or equal to selling price. (R. 161.)

These, in substance, are defendant's proofs. They do not rebut the values established by plaintiff's proofs. There is nothing in the statute to support Mr. Vanderbeek's "idea" as a method of computing cost of production value. To the contrary, Congress has set forth, in specific terms, exactly how cost of production value is to be computed. Mr. Vanderbeek admitted that he did not proceed, in his computation, according to the statutory provision.

It appears that the Velan books of account, from which the value figures as testified were taken, are kept at the head office in Montreal and are in local currency, that is, Canadian. There seems to be no controversy as to this.

As to the profit component of value, it is clear from Mr. Vanderbeek's testimony that the appraiser's valuation included, as the profit component, 8 per centum. Plaintiff does not controvert that percentage factor for profit; defendant has no standing to attack it in this litigation.

Why defendant did not call Agent Fawcett, presumably only a few miles away in Montreal, and chose instead to introduce his report, on the representation that he was not available to testify, was not explained to the court.

Moreover, although defendant's counsel served on plaintiff a notice to produce a considerable array of enumerated documents and papers, defendant's counsel referred on trial only to one of the items recited in this notice. This was the letter sent by Velan to the United States Navy Purchasing Office in New York, which is mentioned earlier. Either no such letter was sent or, if such a letter was sent, it was not in plaintiff's possession and, therefore, plaintiff could not produce it. No one seriously believes that a mailed letter continues in the possession of the sender. Counsel for plaintiff produced in court, and there tendered to defendant's counsel, all other documents and papers recited in the notice to produce. They made a considerable bundle. Defendant's counsel did not use any of them, either to refresh the recollection of a witness or for his scrutiny during trial.

Whether careless or inadvertent, misuse of court process by an officer

of the court is not lightly condoned. There is a mutual obligation on bench and bar to safeguard the orderly administration of justice.

I find as facts:

1. That the merchandise of these appeals to reappraisement consists of steam traps, designated model S with solid cover, model S with glass cover, model P with solid cover, and model P with glass cover, exported from Canada in December 1951, 1952, and 1953.

2. That, at the several times of exportation, such or similar merchandise was not freely offered in Canada for sale to all purchasers for home consumption or for export.

3. That, at the several times of exportation, such or similar merchandise was not freely offered in the United States for sale to all purchasers, packed, ready for delivery.

4. That, at the time of exportation, the major part of steam traps, model S and model P, with solid covers and with glass covers, sold in Canada, were for export to the United States.

5. That information as to the profit ordinarily added, in the case of merchandise of the same general character as the steam traps under consideration, was held confidential by the manufacturers or producers of steam traps in Canada, and such information was not available.

6. That the profit ordinarily added by the manufacturer of the steam traps, model S and model P, was less than 8 per centum of the sum of the cost of materials and labor and general expenses.

7. That this merchandise was appraised by the appraiser on the basis of cost of production under section 402(f), Tariff Act of 1930, as amended, and plaintiff does not controvert such appraisement basis.

8. That the cost of materials and labor, the usual general expenses, the cost of packing, and profit of not less than 8 per centum of the sum of materials and labor and general expenses, in producing the steam traps of these respective appeals, all in Canadian dollars, are as follows:

| | Cost of materials and labor | General expenses | Packing | Profit (8%) | Total |
|---|---|---|---|---|---|
| Reap. 296976–A Type "S" | $7. 52 | $2. 55 | $0. 09 | $0. 81 | $10. 97 |
| Reap. 296977–A "Universal" | 7. 52 | 2. 55 | 0. 09 | 0. 81 | 10. 97 |
| Reap. R58/5591 Type "P" | 4. 41 | 1. 78 | 0. 05 | 0. 50 | 6. 74 |
| Reap. R58/5591 Type "S" | 5. 44 | 2. 17 | 0..09 | 0. 61 | 8. 31 |
| Reap. R58/12095 Type "P" | 4. 41 | 3. 20 | 0. 05 | 0. 61 | 8. 27 |
| Reap. R58/12095 Type "S" | 4. 95 | 3. 60 | 0. 09 | 0. 68 | 9. 32 |
| Reap. R58/12095 Type "P" Junior | 3. 96 | 2. 85 | 0. 05 | 0. 54 | 7. 40 |

I conclude, as a matter of law:

1.   That, at the several times of exportation, there was no foreign, export, or United States value for steam traps, model S and model P, with solid covers and/or with glass covers, as such values are defined in section 402 of the Tariff Act of 1930, as amended.

2.   That cost of production, as defined in section 402(f), of the Tariff Act of 1930, as amended, is the proper basis of value for the model S and model P steam traps, with solid cover and/or with glass cover, of these appeals to appraisement.

3.   That the cost of production values of the respective steam traps of these four appeals are as set forth in finding No. 8 above.

Judgment will be entered accordingly.

SCHEDULE A

| Reap. | Invoice | Date | Item Description | | Quantity |
|---|---|---|---|---|---|
| 296976–A | Commercial (1) | 12/27/51 | Velan Steam Traps | S | 12 |
| " | " | " | "     "     " | S | 12 |
| " | " | " | "     "     " | S | 9 |
| " | Commercial (2) | 12/27/51 | Velan Steam Traps | S | 4 |
| 296977–A | Commercial (2) | 12/28/51 | Velan Steam Trap Universal (S) | | 1 |
| 58/5591 | Proforma (1) | 12/23/52 | Velan Steam Traps | P | 18 |
| " | " | " | "     "     " | S | 12 |
| 58/12095 | Commercial (1) | 12/31/53 | Velan Steam Traps | P | 2 |
| " | " | " | "     "     " | P | 2 |
| " | " | " | "     "     " | S | 3 |
| " | " | " | "     "     " | S | 3 |
| " | " | " | "     "     " | S | 4 |
| " | Commercial (2) | 12/30/53 | Velan Steam Traps | P | 12 |
| " | Commercial (4) | 12/30/53 | Velan Steam Traps | P | 16 |
| " | " | " | "     "     " | P | 8 |