UNITED STATES *v.* A. ORLIKOFF OF MEXICAN ARTCRAFT CO. ET AL.

**No. 7892.**
Entry No. 319–C, etc.

First Division, Appellate Term

(Decided October 10, 1950)

*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the appellant.

*Harper & Harper* (*Charles J. Evans* and *George R. Tuttle* of counsel) for the appellees.

Before OLIVER, COLE, and MOLLISON, Judges; MOLLISON, J., dissenting

OLIVER, Chief Judge:    This is an application made by the Government for review of the decision and judgment of the trial court sitting in reappraisement (Reap. Dec. 7577) filed under the provisions of section 501 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, covering the appeals for reappraisement listed in schedule "A," hereto attached and made a part hereof.

The involved merchandise consists of woven leather slippers known as huaraches, exported from Mexico during the months of February and March 1943. The articles were invoiced and entered in Mexican dollars and were appraised in the same currency. Appraisement was made at higher values than the entered values on the basis of export value. The entered, appraised, and claimed prices are indicated in the following table:

| Entry No., date of entry, and Reap. No. | Merchandise | Invoiced and entered per pair, Mexican $ | Appraised per pair, Mexican $ | Importers' claimed values per pair, Mexican $ |
|---|---|---|---|---|
| 308–C 2/26/43 154211–A | 5,040 pairs women's huaraches | 3. 85 | 4. 38 | 3. 85 |
| 319–C 3/10/43 154212–A | 900 pairs | 3. 85 | 4. 88 | 4. 60 |
| | 2,808 pairs | 4. 20 | 5. 00 | 5. 00 |
| | 612 pairs | 4. 20 | 5. 00 | 5. 00 |
| | 600 pairs | 5. 25 | 5. 35 | 5. 75 |
| 331–C 3/19/43 154213–A | 4,000 pairs | 4. 20 | 5. 50 | 4. 60 |
| | 584 pairs | 4. 20 | 5. 50 | 4. 60 |
| | 260 pairs | 5. 25 | 5. 80 | 5. 75 |

The trial court held that the involved merchandise was properly valued on the basis of export value (section 402 (d), Tariff Act of 1930) and found such values to be as follows:

| Reap. No. | Entry | Exportation date | Quantity | Per pair Mexican $ |
|---|---|---|---|---|
| 154211–A | 308–C | 2/26/43 | 5,040 pairs | 3. 85 |
| 154212–A | 319–C | 3/10/43 | 900 pairs | 4. 60 |
| | | | 3,420 pairs | 5. 00 |
| | | | 600 pairs | 5. 75 |
| 154213–A | 331–C | 3/19/43 | 4,584 pairs | 4. 60 |
| | | | 260 pairs | 5. 75 |

all plus cost of packing and stamp tax.

The value found by the trial court in reappraisement 154211–A represents the entered value. The values found to be the correct values in reappraisements 154212–A and 154213–A are higher than the entered values but represent the values claimed by the importers to be the correct values.

There is no dispute as to the fact that the principal market in Mexico is Guadalajara. There is also no question but that export value is the proper basis for appraisement. The only question for determination is the price at which identical or similar huaraches were freely offered for sale for exportation to the United States at the times of exportation of the three shipments involved.

At the trial, Mrs. Rose Orlikoff testified that she was familiar with the involved merchandise, having seen it when it arrived. She stated that the amounts shown on the invoices were paid to the seller, Macias; that no greater or additional amounts were paid; and that no discounts were received (R. 4). The witness further testified that the huaraches in question varied in sizes and quality; that they were all Oaxaca-style huaraches; that those covered by the invoice of entry 319–C, for 95 cases priced at Mexican $4.20 per pair, were of better quality than those invoiced at Mexican $3.85 per pair; that the huaraches covered by the same entry which were invoiced at Mexican $5.25 per pair consisted of men's sizes and were extra large (R. 7). She further stated that the uppers were made of cowhide and the insoles of split leather, and that the outer sole was of very poor quality, full grain or smooth grain leather (R. 15–16).

The appellant (Government) contends that the values adopted by the trial court do not represent the actual values of the merchandise and specifically assigns as error the admission in evidence of a certain affidavit introduced on behalf of importers (exhibit 1). It maintains that the single judge erred in considering statements contained in said affidavit with respect to the merchandise referred to therein and contends that the mere statement in exhibit 1 that huaraches of better quality than those imported were sold by other dealers at prices lower than those at which the imported huaraches were sold is insufficient to support the importers' claim without proof that the huaraches sold by these other dealers were in fact of better quality. It further contends that a statement in the affidavit that huaraches of the same

type and quality as those imported were sold and freely offered at certain prices was of no probative value because such statement was merely the affiant's opinion as to the prices at which other dealers sold merchandise of the same quality. Affidavits when properly executed and pertinent to the issue are admissible in evidence and are to be given such weight by the court as they merit. *United States* v. *Hess Bros. et al.*, 71 Treas. Dec. 1348, Reap. Dec. 4051. We find no error in the trial court's ruling admitting this affidavit in evidence.

This affidavit, above referred to (exhibit 1), of Juan J. Robles, dated November 11, 1944, states that the affiant was associated with Rose Orlikoff and A. Orlikoff, doing business in Los Angeles, Calif., as the Mexican Artcraft Co.; that he was engaged in buying huaraches in Mexico for that company during the months of January, February, and March 1943, and had thus become familiar with the types and qualities of huaraches sold in Mexico and with the markets for such merchandise; that the majority of sales were made in Guadalajara, which is the principal market for the sale of huaraches in wholesale quantities and in the ordinary course of trade both for home consumption and for export to the United States; that from January 1 to March 31, 1943, Isauro Macias sold huaraches to the Mexican Artcraft Co. at Mexican pesos 3.85, 4.00, 4.20, and 5.25, respectively, per pair; that when the first shipments were received at Los Angeles, the affiant complained to the seller of the inferior quality of the merchandise but Macias insisted that the Mexican Artcraft Co. take all of the huaraches he had assembled, and this was done as the company had deposited with the seller 10,000 Mexican pesos to cover an order for 35,000 pairs of huaraches, which deposit was to be applied to the last shipment. The affiant further stated that from January 1 to March 31, 1943, other dealers in Guadalajara offered him huaraches of better quality at prices the same as or lower than Mexican pesos 3.85, 4.00, 4.20, and 5.25; that these offers were freely made to all purchasers in the usual wholesale quantities and in the ordinary course of trade; that he found by comparison that the huaraches supplied by Macias were inferior in quality but that he could not accept the offers made by other dealers as he could not discontinue dealing with Macias because of the deposit above referred to; that he was in Guadalajara during January, February, and March 1943, and kept in touch with the wholesale market prices of huaraches during that period; that the prices in Guadalajara remained the same between January 1 and February 7, 1943, when huaraches were added to the rationed list in the United States and the prices then dropped for about 2 or 3 weeks. Thereafter, the market gradually recovered and prices returned to their former level. Subsequently, these prices became considerably inflated from March 10 to May 1943.

The affiant further stated that huaraches of better quality (how much better or in what respects are not shown) than those sold by Macias to the importer, Mexican Artcraft Co., brought higher prices during and before the first quarter of 1943, but huaraches of the same type and quality as those imported were sold and freely offered for sale for export at the following prices:

From February 11 to February 26, inclusive, huaraches regardless of quality were offered by many manufacturers in Guadalajara at 3.00 pesos per pair f. o. b. Guadalajara.

| | Type and quality sold by Isauro Macias at pesos 3.85 | Type and quality sold by Isauro Macias at pesos 4.00 and 4.20 | | Type and quality sold by Isauro Macias at pesos 5.25 |
|---|---|---|---|---|
| Mar. 10 | 4. 60 | 5. 00 | 5. 00 | 5. 75 |
| Mar. 19 | 4. 60 | 5. 00 | 5. 00 | 5. 75 |

Affiant also stated that the prices above set forth were exclusive of cost of packing, stamp and aforo taxes, shipping charges, and other transportation expenses. Prices did not vary according to the quantity sold.

The appellees herein claim the above prices represent the values of the involved huaraches on the dates of exportation.

The Government offered, and there was received in evidence, a report of a Treasury representative, dated May 17, 1943 (exhibit 3). This report states that the information contained therein was obtained by a personal inspection of the regular books and records of the shipper herein, supplemented by information obtained from the two managing partners of that concern. It appears that this shipper began to use "carnaza" or split leather for both inner and outer soles about February 15, 1943. This report gives a list of certain sales made by the shipper during the period from February 26 to April 7, 1943, which will be referred to hereinafter.

The appellant contends that the oral evidence fails to establish a statutory export value for the imported merchandise, and that exhibit 1 does not meet the statutory requirements with respect to the proof necessary to establish export value of such or similar merchandise, claiming that said exhibit fails to show whether or not the seller, Macias, freely offered and sold this merchandise to others in the United States than the importers herein. The appellant further maintains that there is substantial evidence to support the values found by the appraiser, and, more specifically, that exhibit 3 supports such finding.

The party appealing for reappraisement has the burden not only of overcoming the presumption of correctness of the appraiser's valuation but of affirmatively establishing the correct value. *Harry Garbey* v. *United States*, 24 C. C. P. A. 48, T. D. 48332. It was incumbent upon the appealing party "to meet every material issue involved in the case." *United States* v. *Malhame & Co.*, 19 C. C. P. A. 164, T. D. 45276.

The oral testimony in this record is not, of itself, sufficient to establish a statutory export value for the imported merchandise. While the Robles affidavit (exhibit 1) states that the imported merchandise was of an inferior quality, it does not set forth the degree of claimed inferiority, or the perfection of the standard quality. The affidavit further goes on to state that other dealers in the principal market offered affiant huaraches "of better quality at prices the same or lower than" those of the seller here in question. It further states that the affiant found by comparison that the huaraches supplied by the seller in question were "inferior in quality." The affidavit also states that huaraches "of the same type and quality" as those imported were sold and freely offered for sale to all purchasers in the principal market in the usual wholesale quantities and in the ordinary course of trade for export to the United States on the dates of exportation of the merchandise here in question at certain prices stated therein. These statements are contradicted by exhibit 3 which sets forth a record of sales to other importers of huaraches by the same seller on the dates of exportation of the imported merchandise at different prices and the importers have failed to establish that the merchandise involved in these other sales were dissimilar to the imported huaraches. The statements contained in exhibit 1, offered by appellees on the trial, are conclusions and are not supported by competent evidence.

The importers had the burden of showing the differences, if any, between the imported huaraches and those claimed to be of standard quality and also the degree of difference in the prices therefor. While it may be true that the affiant (exhibit 1) herein was familiar with the trade and the markets for merchandise like the huaraches before us, there is no statutory proof in the record before us that the huaraches sold to the importers herein and those sold by the same seller to other importers on or about the dates of exportation were different for valuation purposes.

The record indicates that the insoles of the imported huaraches were of "split" leather. The Government's exhibit 3 indicates that the shipper began to use "carnaza" or split leather for both inner and outer soles about February 15, 1943, and the huaraches involved in a shipment to the De Haan Import Corp. on March 12, 1943, at prices ranging from Mexican $4.88 to Mexican $5.35 per pair, were of full grain cowhide inner sole. There is, however, no proof of the type of leather involved in the other two major portions of these huaraches sold to De Haan, namely, the upper and outer soles. There is no proper basis of comparison to establish dissimilarity between the imported huaraches and those sold to other importers on or about the dates of exportation. The importers have failed in their burden of proof inasmuch as they have failed to show that the values adopted by the appraiser were not the proper values.

We find the following facts:

1. That the merchandise in question consists of huaraches exported from Mexico on February 26, March 10, and March 19, 1943.

2. The huaraches in question were appraised on the basis of shipments of huaraches made by the same seller to a different importer.

On the basis of the record before us, we conclude as a matter of law:

1. That the appellees (plaintiffs below) have failed to prove a value for the merchandise herein other than the appraised values.

2. That the proper basis of appraisement of the huaraches here in question is export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, and that such export values are the appraised values.

The judgment of the court below is reversed. Judgment will issue accordingly.

### DISSENTING OPINION

MOLLISON, Judge: I must respectfully dissent from the opinion and judgment of my colleagues. I am of the opinion that the record evidence warrants an affirmance of the trial court's findings and judgment.