(Reap. Dec. 8610)

J. ARDITI *v.* UNITED STATES

Entry Nos. 74147; 74146.

(Decided June 27, 1956)

*Eugene R. Pickrell (Richard F. Weeks* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster,* trial attorneys), for the defendant.

JOHNSON, Judge: These appeals for reappraisement, consolidated at the trial, involve canned corned beef exported from Peru on May 21, 1952. The merchandise was described on the invoices as #1 Argentine Pampa brand corned beef and was packed in 12-ounce cans, 48 cans to the case. It was entered at $12.50 per case (U. S. currency), less nondutiable charges, and appraised at 240 Peru soles per case, net packed.

The evidence herein is entirely documentary and consists of three affidavits of Jacques Varsano (plaintiff's exhibits 1, 2, and 3); an operations memorandum and attached papers, from the American Embassy at Lima, Peru, to the Department of State, dated December 18, 1952, reference No. 332.3 (Customs) 418/52 (defendant's collective exhibit A); and a similar operations memorandum, dated June 17, 1953, reference No. 332.3 (Customs) 418–A/52 (defendant's collective exhibit B).

It appears from these documents that the involved merchandise was sold on April 28, 1952, by Mercantil del Pacífico, S. A., of Lima,

Peru, to I. Arditi, of New York, the plaintiff herein, for $12.50 per case c. i. f. New York, for exportation to New York. The merchandise had been purchased by said Mercantil del Pacífico, S. A., from various packing houses in Argentina and was intended for sale in Peru, "but the Peruvian market did not absorb corned beef or canned meat" (questionnaire attached to defendant's collective exhibit A). When no suitable market was found in Peru, the merchandise was exported to the United States.

Of the three affidavits of Jacques Varsano, the third, dated January 10, 1956, which was submitted at a second hearing of this case and which, in effect, supersedes the other two, is the most pertinent. It states that Jacques Varsano was the manager of Mercantil del Pacífico, S. A., from March 1 to October 5, 1952; that during the period he made all purchases and sales of canned meats, including canned corned beef in 12-ounce tins, for his firm; and that he made the sale involved herein. He stated further:

5. That canned corned beef 12-oz. tins, such as the merchandise described in paragraphs 3 and 4 hereof, is not usually bought and sold for home consumption in Peru.

6. That within 90 days prior to May 30, 1952, there were no sales nor offers for sale of canned cored been [sic] 12-oz. tins, such or similar to the merchandise described in paragraphs 3 and 4 hereof, for home consumption in Peru.

7. That on and prior to May 30, 1952, I freely offered the merchandise described in paragraphs 3 and 4 hereof to all possible purchasers for export to the United States at $12.50 per case, C. I. F. port of Destination in the United States.

According to a letter from the attaché of the American Embassy in Lima, Peru, to the Commissioner of Customs, dated June 17, 1953 (defendant's collective exhibit B), inquiries were made from trade sources in Peru in order to obtain further information as to the value of this merchandise. It was found that Mercantil del Pacífico, S. A., had offered the corned beef for sale in the local market in April 1952. One Peruvian wholesaler stated that it had been offered to him at a price of $12 per case, with an indication that the price could be reduced to $10 per case, if the whole lot were purchased. He reported that:

* * * whereas the price quoted was well below the current market value of the merchandise, he declined the offer due to the fact that he had a stock of some 500 cases of corned beef on hand which he considered ample in relation to the demands of the local market. Sr. Olcese recalls that Mercantil del Pacífico S. A. later sold the merchandise, offered to him and other local merchants, in the United States.

The Embassy letter also states:

It has been ascertained that in May of 1952, Dacal y Cía., Ltda., importers, located at 114 Sáenz Peña, Callao, had similar merchandise on hand and was

selling it in wholesale lots in this market at S/240.00 per case. Specifically, this was "Anglo" brand corned beef, manufactured by Frigorífico Anglo, Av. R. S. Peña 788, Buenos Aires, Argentina, in cans containing 12 oz. net, packed in wooden cases of 48 cans each, which is the type of packing in which it was received from Argentina and in which it was offered for local sale.

Although the appraiser did not state the basis of his appraisement, it is evident that it was on the basis of foreign value. It is plaintiff's contention that there was no foreign value for such or similar merchandise and that, therefore, the proper basis of appraisement is the export value, which is the entered value.

The law governing reappraisement cases has been recently stated by our court of appeals in *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, 196, C. A. D. 593, as follows:

* * * There is a statutory presumption that the value found by the appraiser is correct. The burden upon a party attacking an appraised value is two-fold, i. e., to prove the action of the appraiser erroneous, and to establish some other dutiable value as the proper one. In other words, it is not incumbent upon the Government to prove that the appraised value is proper, until or unless the importer shows such appraisement to be erroneous and establishes a different value in place thereof. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, and *Kenneth Kittleson* v. *United States*, 40 C. C. P. A. (Customs) 85, C. A. D. 502, and cases cited therein.

In the instant case, plaintiff is clearly under the burden of proving the absence of a foreign value for the involved merchandise. To do so, it was incumbent upon him to establish that neither such nor similar merchandise was freely offered for sale to all purchasers in the principal markets of Peru, in the usual wholesale quantities and in the ordinary course of trade. *United States* v. *International Forwarding Co., Inc., a/c Ozalid Corporation*, 27 C. C. P. A. (Customs) 21, C. A. D. 56, and cases cited; *International Forwarding Co., Inc., et al.* v. *United States*, 34 Cust. Ct. 540, A. R. D. 56.

All that plaintiff has offered for this purpose are the affidavits of Jacques Varsano, heretofore mentioned. In the third such affidavit (plaintiff's exhibit 3), it is stated in paragraph 5 that *such* merchandise is not bought and sold for home consumption in Peru. That statement is not equivalent to a denial that such sales were made, nor does it indicate whether or not similar merchandise was offered and sold in the domestic market. *International Forwarding Co., Inc., et al.* v. *United States, supra.*

In paragraph 6 of the affidavit, the witness avers that, for 90 days prior to May 30, 1952, there were no sales or offers for sale of such or similar merchandise for home consumption in Peru. While the affiant stated that he made all purchases and sales of canned corned beef for his firm and that the facts stated in the affidavit were within his personal knowledge, he did not disclose what inquiries or investiga-

tions he made to ascertain whether there was a domestic market for such or similar merchandise. So far as the affidavit shows, and no other evidence has been presented, such or similar merchandise could have been bought and sold in Peru without the deponent's knowledge. There is nothing before the court to indicate that he was qualified to testify as to any matters outside the scope of his firm's business. In fact, the affidavit does not set out any evidentiary facts from which the conclusions of the witness could have been drawn. A mere declaration of essential ultimate facts is not the substantial evidence required to establish plaintiff's case. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495; *Kobe Import Co.* v. *United States, supra.*

Furthermore, the affidavit is contradicted by statements in defendant's collective exhibit B to the effect that this merchandise had been offered for sale in Peru and that similar merchandise had been sold in wholesale lots in Peru. Where a report of a Treasury representative shows that merchandise of the same character has been sold to others and there is no proof that such merchandise is dissimilar to the imported merchandise, or where a report of a Treasury representative contradicts statements in an affidavit and no additional evidence is offered in rebuttal to show the existence or nonexistence of a foreign value, it has been held that the plaintiff has not sustained the burden of proof. *United States* v. *A. Orlikoff of Mexican Artcraft Co. et al.*, 25 Cust. Ct. 441, Reap. Dec. 7892; *Chas. E. Washburn Company* v. *United States*, 32 Cust. Ct. 596, Reap. Dec. 8294, affirmed in 34 Cust. Ct. 536, A. R. D. 55.

The evidence presented is insufficient to establish that no such or similar merchandise was offered or sold in Peru for home consumption on or about the date of exportation of the merchandise involved herein. Plaintiff has, therefore, failed to sustain his burden of proving the nonexistence of a foreign value. Consequently, it is unnecessary to determine whether or not an export value has been proved by this record. Since the presumption of correctness attaching to the appraiser's finding of value has not been overcome, the appraised value must be sustained.

On the record presented, I find as facts:

1. That the merchandise involved herein consists of canned corned beef, packed in 12-ounce cans, 48 cans to the case, exported from Peru on May 21, 1952.

2. That said merchandise was entered at $12.50 per case (U. S. currency), less nondutiable charges, and was appraised at 240 Peru soles per case, net packed, on the basis of foreign value.

3. That the evidence is insufficient to establish that, at or about the time of exportation, no such or similar merchandise was offered

or sold in Peru for home consumption in the usual wholesale quantities and in the ordinary course of trade.

I conclude as a matter of law:

1. That the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

2. That the proper basis for the determination of the value of the merchandise involved herein is foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended.

3. That such value is the appraised value.