(A.R.D. 127)

UNITED STATES *v.* A. N. DERINGER, INC.

Entry Nos. A–4033; A–4058; A–3770; A–3960.

## First Division, Appellate Term

(Decided March 7, 1961)

*William H. Orrick, Jr.*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellant.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: In this proceeding, we review the decision of Donlon, J., reported as *A. N. Deringer, Inc.* v. *United States*, 44 Cust. Ct. 630, Reap. Dec. 9656, which involved certain steam traps, exported from Canada, and entered at the port of Rouses Point, N.Y. Two types of steam traps are in dispute. One type is identified on the invoices with the letter "S"; the other is identified by the letter "P." The specific items involved herein are enumerated in schedule "A," hereto attached and made a part hereof.

The issue herein, and as viewed by the trial judge, is a determination of the statutory cost of production, section 402(f) of the Tariff Act of 1930, of the articles in question. The lower court held such value for the various items in question to be as follows (all of the following amounts are in Canadian dollars):

| | Cost of materials and labor | General expenses | Packing | Profit (8%) | Total |
|---|---|---|---|---|---|
| Reap. 296976–A Type "S" | $7.52 | $2.55 | $0.09 | $0.81 | $10.97 |
| Reap. 296977–A "Universal" | 7.52 | 2.55 | 0.09 | 0.81 | 10.97 |
| Reap. R58/5591 Type "P" | 4.41 | 1.78 | 0.05 | 0.50 | 6.74 |
| Reap. R58/5591 Type "S" | 5.44 | 2.17 | 0.09 | 0.61 | 8.31 |
| Reap. R58/12095 Type "P" | 4.41 | 3.20 | 0.05 | 0.61 | 8.27 |
| Reap. R58/12095 Type "S" | 4.95 | 3.60 | 0.09 | 0.68 | 9.32 |
| Reap. R58/12095 Type "P" Junior | 3.96 | 2.85 | 0.05 | 0.54 | 7.40 |

The cited decision is the subject of this application for review. Appellant has assigned eight errors. We dispose of all without reference to each individually.

Although appellant concedes that the steam traps in question were appraised on the basis of cost of production, and appellee accepts cost

of production as the proper basis for appraisement of the merchandise, Government counsel here, as he did before the trial court, urges that appellee (plaintiff below) had the burden of showing, by competent evidence, that there was no foreign value, export value, or United States value for such or similar merchandise, as a condition precedent to a claim for cost of production.

The question thus raised was very thoroughly discussed in the decision of the trial judge, who reviewed in detail 13 cases which had been cited by Government counsel to support the Government's position. Appellant's brief, filed herein, cites the same line of cases. To review them would be mere repetition of the lower court's opinion. Suffice to say that I agree with the reasoning followed and the conclusion reached by the trial judge in holding to the effect that when the appraiser adopted cost of production as the basis for appraisement of this merchandise, the presumption of correctness attaching to such action implies that the appraising officer found neither a foreign, export, nor United States value for such or similar merchandise. *United States* v. *Schroeder & Tremayne, Inc., et al.*, 41 C.C.P.A. (Customs) 243, C.A.D. 558, and *Golding Bros. Co., Inc.* v. *United States*, 21 C.C.P.A. (Customs) 395, T.D. 46926. As stated in the decision of the trial judge, "the presumption of correctness here legally implies that the appraiser made findings as to all the elements requisite to determine that cost of production value was the correct dutiable value of this merchandise." The principle was applied very recently in *B. A. McKenzie & Co., Inc., et al.* v. *United States*, 47 C.C.P.A. (Customs) 143, C.A.D. 748, which was decided subsequent to the decision here under review. The *McKenzie* case involved appraisement of certain rifles manufactured in Sweden, and, in the course of its decision therein, the appellate court stated that "the appraiser in adopting the cost of production as the proper basis upon which to determine the value of the importations must have concluded that no facts existed upon which foreign value could be predicated."

Notwithstanding a favorable controlling legal principle to support its contention that there was no obligation to prove the absence of a foreign, export, or United States value, plaintiff, in the court below, introduced competent testimony, through the Canadian exporter's sales engineer, showing that offers for sale in the Canadian market for steam traps, such as those under consideration, both for home consumption and for export to the United States, were restricted, being confined to selected distributors only; that there were no offers for sale of such merchandise in wholesale quantities in the United States; and that there was no freely offered merchandise similar to the steam traps in question. These established facts give complete support to plaintiff's contention that cost of production is the proper basis for appraisement of the steam traps under consideration.

We proceed toward a determination of the statutory cost of production of the present merchandise, which basis of valuation is defined in section 402 (f) of the Tariff Act of 1930, as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The decision of the trial judge includes a complete and an accurate analysis of the evidence adduced by both parties. We adopt, by reference, the trial court's review of the record and shall refer specifically only to such phases thereof as are deemed necessary for our disposition of the case.

A chartered accountant of Montreal employed as an auditor by Velan Engineering, Ltd., the Canadian manufacturer of the present merchandise, supplied the competent proof, establishing the manufacturer's cost of production for the "Velan" steam traps under consideration. The various costs, required under the statute, section 402 (f), *supra*, are set forth in the following tabulation:

| Reap. | Item | Materials & labor | General expenses | Packing | Profit |
|---|---|---|---|---|---|
| 296976–A | S (solid cover) | $7. 52 | $2. 55 | $0. 09 | 4½% |
| 296977–A | S (solid cover) | 7. 52 | 2. 55 | 0. 09 | 4½% |
| R58/5591 | P Junior (glass cover) | 4. 41 | 1. 78 | 0. 05 | none |
| R58/5591 | S (glass cover) | 5. 44 | 2. 17 | 0. 09 | none |
| R58/12095 | P Junior (glass cover) | 4. 41 | 3. 20 | 0. 05 | 2% |
| R58/12095 | S (solid cover) | 4. 95 | 3. 60 | 0. 09 | 2% |
| R58/12095 | P Junior (solid cover) | 3. 96 | 2. 85 | 0. 05 | 2% |

The witness' testimony, explaining how he obtained the different costs, as itemized, supports the following summation. "Materials & Labor" embody such costs for the period of 1 hour—the time it takes to produce a steam trap—preceding the time of exportation which would ordinarily permit the manufacture of steam traps, such as those identified in the foregoing tabulation, in the usual course of business, plus the cost of fabrication, manipulation, and all other processes employed in producing such merchandise. The amounts shown as "General Expenses" were taken from financial statements as at the end of the fiscal year, which, in the Canadian manufacturer's business, is the same as the calendar year. "Packing" includes the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing these steam traps in condition, packed ready for shipment. The amount of profit, as hereinabove shown, is the profit made by the manufacturer of the present merchandise and is based on the actual books and records, and profit and loss statements, of the corporation. The witness stated that he tried to obtain the profit realized by other Canadian manufacturers of steam traps, but "it seems it is very confidential, and nobody will disclose what they are actually making." (R. 65.) Under such circumstances, showing, as they do, that the profit ordinarily added by other manufacturers in the country of exportation is not reasonably ascertainable, then, as here, the profit actually added by the manufacturer of the merchandise under consideration meets statutory requirements. *United States* v. *Henry Maier*, 21 C.C.P.A. (Customs) 41, T.D. 46378, and *United States* v. *Jovita Perez*, 36 C.C.P.A. (Customs) 114, C.A.D. 407.

On cross-examination, the witness was confronted with certain letters and financial statements (defendant's collective exhibit C) which he, as auditor, prepared on behalf of Velan Engineering, Ltd., for submission to the United States Navy Purchasing Office in New York City, in connection with negotiations for a contract and to show that "the firm [Velan Engineering, Ltd.] is competent enough to fulfill its Navy contract." (R. 126.)

Referring to the "INTERIM PROFIT & LOSS STATEMENT—JANUARY 1st, 1953—DECEMBER 31st, 1953," and the "INTERIM BALANCE SHEET AS AT DECEMBER 31st, 1953" (parts of said collective exhibit C), which were characterized as only "estimated" (R. 133) and intended "to give the Navy an idea of what sort of firm they were doing business with," the witness testified that the interim statements were prepared specifically to meet Navy requirements and that they do not truly reflect the financial condition or position of Velan Engineering, Ltd., because they were prepared "before the books were closed off for the fiscal year." (R. 95.) The interim profit and loss statement does not include certain commissions and other items associated with the

servicing of the finished product because they are not figured in prices quoted for Navy work. In the interim balance sheet, the amounts shown for "Inventory" and "Accounts Receivable" are not accurate because shipments of merchandise made near the end of the year might continue to be carried as inventory until payment therefor is received which would run into the following fiscal year. The exact procedures followed are matters which the manufacturing firm determined. The actual financial position of Velan Engineering, Ltd., as of the close of the fiscal year, 1953, is shown on the witness' certified statements (defendant's collective exhibit D), and the difference between the two sets of statements (collective exhibits C and D, *supra*) are set forth on the reconciliation sheet (defendant's exhibit E), prepared by the witness and explained by him to United States Treasury representatives, when the matter of valuation of "Velan" steam traps was being investigated. There is nothing in the lengthy cross-examination of the witness to disturb the positive facts established through his direct testimony, showing the Canadian manufacturer's cost of production of the present merchandise according to the specific terms of the statute. Accordingly, we adopt, as our own, the trial court's conclusion stating that "Plaintiff has made at least a *prima facie* case for the values for which it contends, by proof of values determined on the basis of actual costs of production during a period, in each instance, of approximately 1 hour before the time of exportation, plus the statutory minimum allowance for profit."

Defendant's (appellant's) evidence does not rebut or contradict plaintiff's (appellee's) case. The sole witness who appeared on behalf of defendant was a customs official. He stated that he was stationed at Montreal as a customs agent at the time Government officials were checking the foreign market on the value of "Velan" steam traps and that, later, he was transferred to Rouses Point, the port of entry of the present merchandise, where he assumed the position of customs examiner. The witness stated further that, in the course of his official duties as customs examiner at Rouses Point, he received the assignment of advising the appraiser in the matter of appraising the present merchandise and that his advice was accepted by the appraiser. His testimony, outlining the method he followed in computing cost of production for the appraiser of this merchandise, reveals a disregard for, and a departure from, the formula laid down under the mandatory provisions of the statute, section 402(f), *supra*. The following excerpt from his testimony shows how the witness computed his cost of production for the steam traps under consideration:

X Q. * * * But you are sure that you worked back from the selling price, is that correct?—A. That is right, yes.

X Q. And that is the way you determined the cost of material, and that is the way you determined the cost of labor, right, by working backwards?— A. And fabrication.

X Q. And fabrication. And that is the way you determined the overhead also?—A. The overhead, similarly, yes.

X Q. In the same manner. And that is also the manner in which you determined the profit, is that correct?—A. No, we added 8 per cent, and too, as I said before——

X Q. Yes, that is right, you did that for type "P" and type "S" for all three years, is that right?—A. Yes.

Asked to explain why he followed the method, set forth in the foregoing quoted testimony, the witness stated that he proceeded on the assumption that the cost of production should be somewhere near or equal to the selling price and that the amounts—which are estimated costs—for materials and labor, general expense, and packing, did not "add up to anything near the net result, net selling price," so "we used the final selling price as a basis for determining cost of production."

The appraiser's finding of cost of production, as hereinabove outlined, does not follow the controlling statute. There is nothing in the clear and unambiguous language of the statutory definition of cost of production, section 402(f) of the Tariff Act of 1930, that allows for a determination of such value through a series of deductions (estimated costs) from a selling price, as adopted by the appraiser in this case. As aptly stated by this court in *Zigmund Loew* v. *United States*, 2 Cust. Ct. 861, Reap. Dec. 4529, "Cost of production when used as a basis of finding the dutiable value of imported merchandise, as provided for in section 402(f), *supra*, is to be founded upon facts gained through experience in the manufacture of such or similar materials, and an appraisement based upon an estimate, such as we have here, is clearly erroneous."

On the basis of the record before us, and for all of the reasons hereinabove set forth, we find as matter of fact:

1. That the merchandise involved herein was exported from Canada during the years 1951, 1952, and 1953, and consists of different styles or models of steam traps, enumerated in schedule "A," hereto attached and made a part hereof.

2. That this merchandise was appraised on the basis of cost of production, as defined in section 402(f), *supra*, and appellee (plaintiff below) does not dispute such basis for appraisement.

3. That information as to the profit ordinarily added as to merchandise of the same general character as the steam traps under consideration was held confidential by the manufacturers or producers of steam traps in Canada, and such information was not available.

4. That the profit ordinarily added by the manufacturer of the steam traps in question was less than 8 per centum of the sum of the cost of materials and labor and general expenses.

5. That the cost of materials and labor, the usual general expenses, the cost of packing, and profit of not less than 8 per centum of the sum of materials and labor and general expenses, in producing the steam

traps involved in these appeals for reappraisement, all in Canadian dollars, are as follows:

| | Cost of materials and labor | General expenses | Packing | Profit (8%) | Total |
|---|---|---|---|---|---|
| Reap. 296976–A Type "S" | $7. 52 | $2. 55 | $0. 09 | $0. 81 | $10. 97 |
| Reap. 296977–A "Universal" | 7. 52 | 2. 55 | 0. 09 | 0. 81 | 10. 97 |
| Reap. R58/5591 Type "P" | 4. 41 | 1. 78 | 0. 05 | 0. 50 | 6. 74 |
| Reap. R58/5591 Type "S" | 5. 44 | 2. 17 | 0. 09 | 0. 61 | 8. 31 |
| Reap. R58/12095 Type "P" | 4. 41 | 3. 20 | 0. 05 | 0. 61 | 8. 27 |
| Reap. R58/12095 Type "S" | 4. 95 | 3. 60 | 0. 09 | 0. 68 | 9. 32 |
| Reap. R58/12095 Type "P" Junior | 3. 96 | 2. 85 | 0. 05 | 0. 54 | 7. 40 |

Accordingly, we conclude as matter of law:

(1)   That, at the time of exportation of the present merchandise, there was no statutory foreign, export, or United States value therefor.

(2)   That cost of production, as defined in section 402(f), *supra*, is the proper basis for appraisement of the steam traps in question.

(3)   That such statutory value for this merchandise is as set forth in finding of fact (5) above.

The judgment of the trial court is affirmed.

Judgment will be rendered accordingly.

SCHEDULE A

| Reap. | Invoice | Date | Item description | Quantity |
|---|---|---|---|---|
| 296976–A | Commercial (1) | 12/27/51 | Velan Steam Traps S | 12 |
| " | " | " | " " . " S | 12 |
| " | " | " | " " " S | 9 |
| " | Commercial (2) | 12/27/51 | Velan Steam Traps S | 4 |
| 296977–A | Commercial (2) | 12/28/51 | Velan Steam Trap Universal (S) | 1 |
| 58/5591 | Proforma (1) | 12/23/52 | Velan Steam Traps P | 18 |
| " | " | " | " " " S | 12 |
| 58/12095 | Commercial (1) | 12/31/53 | Velan Steam Traps P | 2 |
| " | " | " | " " " P | 2 |
| " | " | " | " " " S | 3 |
| " | " | " | " · " " S | 3 |
| " | " | " | " " " S | 4 |
| " | Commercial (2) | 12/30/53 | Velan Steam Traps P | 12 |
| " | Commercial (4) | 12/30/53 | Velan Steam Traps P | 16 |
| " | " | " | " " " P | 8 |