(Reap. Dec. 9980)

I. ARDITI *v.* UNITED STATES

Entry No. 900.

(Decided April 19, 1961)

*Eugene R. Pickrell* (*Richard F. Weeks* of counsel) for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

DONLON, Judge: Plaintiff has previously litigated this issue. In *I. Arditi* v. *United States*, 37 Cust. Ct. 466, Reap. Dec. 8610, the merchandise was likewise Argentine canned corned beef, exported from Peru. In an opinion written by Judge Johnson, it was held that plaintiff's proofs, in the form of an affidavit, contained no evidentiary facts but were merely the declaration of essential ultimate facts which the court was required to find from appropriate evidence and, hence, that plaintiff had not overcome the presumption of correctness attaching to the appraiser's finding of value.

The Argentine canned corned beef of the present litigation was exported from Peru on May 9, 1952, approximately the same time (May 21, 1952) as the canned corned beef of the earlier litigation. The merchandise here was entered at New Orleans.

On trial, the record in the prior *Arditi* case was incorporated, on defendant's motion and without objection by plaintiff, into the record here. Plaintiff adduced the testimony of Mr. Isaac Arditi and introduced into the record the following documents:

Affidavit of Gustavo Eguren, suscribed and sworn to in Lima, Peru, on November 21, 1960. [Exhibit 1.]

Two affidavits of Jose Olcese, subscribed and sworn to in Lima, Peru, respectively, on June 15, 1960, and November 21, 1960. [Exhibits 2, 3.]

Affidavit of Egardo Otten, subscribed and sworn to in Lima, Peru, on June 15, 1960. [Exhibit 4.]

Affidavit (in letter form) of Jose Dacal Perez, addressed to I. Arditi, Esq., Lima, dated at Callao June 15, 1960, in the Spanish language, with attached English text certified (also on June 15, 1960) by Leonidas Avendano H., official translator of the Ministry for Foreign Affairs of the Republic of Peru, as a true and complete translation. [Exhibit 5.]

The parties filed the statements required by rule 15(d). On trial, plaintiff moved to amend his statement. As finally amended, after attempted filing (without leave) of various statements, the value contended for by plaintiff is stated to be foreign value. The unit foreign value plaintiff claims is 120 Peruvian soles per case of merchandise. Defendant's statement also contends for foreign value, but claims that the appraised value of 240 Peruvian soles per case, net packed, is the correct foreign value.

It appears from these issue statements that the appraised *basis* of value is accepted by plaintiff. The issue is narrowed down to a controversy as to the amount of the foreign value of the merchandise. Is it 240 soles, as appraised, or only 120 soles, as plaintiff claims?

In the incorporated *Arditi* case, as here, appraisement was on the basis of foreign value. However, there, plaintiff did not concede foreign value as the basis of appraisement, claiming there was no foreign value but that there was an export value. The court said, after analyzing the record:

The evidence presented is insufficient to establish that no such or similar merchandise was offered or sold in Peru for home consumption on or about the date of exportation of the merchandise involved herein. Plaintiff has, therefore, failed to sustain his burden of proving the nonexistence of a foreign value. [*I. Arditi v. United States, supra*, p. 469.]

No evidence is needed here as to the basis of appraisement. *A. N. Deringer, Inc.* v. *United States*, 44 Cust. Ct. 630, Reap. Dec. 9656, affirmed, *United States* v. *A. N. Deringer, Inc.*, 46 Cust. Ct. 762, A.R.D. 127. It is conceded to be the basis used in the appraisement, namely, foreign value.

The record here, including the record in the incorporated case, throws light on the circuitous importation from Argentina into Peru, and from Peru into the United States, of canned corned beef, product of Argentina. It appears that, in 1952, at and prior to the importation into the United States of the merchandise now before the court, there was a convention between Peru and the Argentine which permitted certain purchases and sales to be made, with payment charged to controlled currency accounts. Argentine canned corned beef was merchandise approved for such transactions. Hence, it was then possible for Peruvians to import Argentine canned corned beef into Peru at prices that reflected the controlled exchange rates.

The quantities so imported exceeded the amount of canned corned beef which the domestic Peruvian market could absorb. Affidavits offered by plaintiff in this and the incorporated litigation show, as

extremes, no sales whatsoever in the Peruvian domestic market and a maximum of 1,000 cases per year for all sales of Argentine canned corned beef in the Peruvian domestic market. Inasmuch as both parties concede there were free offerings of the merchandise in Peru for domestic consumption, the old evidence that there were no such offerings may be disregarded. The only evidence as to the total quantity sold is that it did not exceed 1,000 cases per year.

The sale here in litigation was for the export of 6,522 cases from Peru to the United States. Clearly, the usual wholesale quantity on sales within Peru, aggregating at most only 1,000 cases in the entire year for all such sales, would be a considerably lesser volume than the single transaction here. There are affidavit statements as to sales in Peru in quantities of 30 cases or more, said to be the usual wholesale quantity; of 50 cases "and upwards"; and of 1 to 10 cases. There is evidence that offerings of 500 cases and 1,000 cases were not taken.

Plaintiff's proofs show variation in price. In part, at least, the figures are not actually the prices of sales made in Peru, but rather some kind of a constructed price.

Jose Dacal Perez, a partner of Dacal y Cia., Ltda., says that his firm sold a total of 30 cases of Argentine canned corned beef in the Peruvian market, in lots of 1 to 10 cases, at the price of 240 soles per case. While this affidavit was introduced by plaintiff, it confirms the information on which appraisement was based. It appears in the Dacal affidavit, by detailed figures, that the aggregate of profit and expense, after delivery into warehouse in Callao on importation from Argentina, was 68 soles. How much was expense and how much profit, is not stated. The price, landed in Peru from Argentina, was 172 soles.

Jose Olcese states in his affidavit that the price was between 122 and 125 soles, c.i.f. Callao. This is considerably less than the landed price of 172 soles which the Dacal affidavit reports. It is noted that the Olcese firm are agents of Frigorifico Armour of Argentina, and there is nothing to show what items constitute the lower Olcese prices. The Dacal affidavit is considerably more detailed, less conclusory.

I agree with defendant that the Eguren affidavit is not entitled to much weight, both because it contradicts in important respects the earlier affidavit of his principal, Varsano, which is also in evidence, and because, after a lapse of more than 8 years, he candidly states only a recollection.

Plaintiff argues that by no stretch of the imagination can a sale of 10 cases "compare" with the present transaction, a sale of 6,522 cases. That, of course, is not the issue, and plaintiff knows that it is not.

The issue is what is the foreign value, under section 402 of the Tariff Act of 1930, as amended and effective in 1952, at the time of this importation. It may be well, in view of plaintiff's argument, to quote in full the statutory definition of foreign value.

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, *in the usual wholesale quantities and in the ordinary course of trade,* including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [Emphasis supplied.] [19 U.S.C. § 1402(c).]

It is the usual wholesale quantities in the ordinary course of trade in Peru, and the market value or price for such quantities, that plaintiff is required to prove. If anything, plaintiff's proofs show no other *usual* wholesale quantity and price for such quantity, save the quantity and price stated in the Dacal affidavit. Other statements are merely conclusory, or reflect landed price from Argentina and not the price at which the merchandise actually was sold in Peru.

The weight of evidence before me confirms the appraised value. Plaintiff has a twofold burden of proof. He has not overcome the presumption of correctness that attaches to the appraisement, nor has he proved the claimed value of 120 Peruvian soles.

I find as facts:

1. That the merchandise consists of canned corned beef, product of the Argentine, exported from Peru on May 9, 1952.

2. That, at the time of exportation, such or similar merchandise was freely offered, in Peru, for sale to all purchasers, in the ordinary course of trade, for home consumption.

3. That the merchandise was appraised at 240 Peruvian soles per case, net packed, on the basis of foreign value.

4. That the weight of evidence confirms the appraised value and does not prove the claimed value of 120 Peruvian soles.

I conclude as a matter of law:

1. That the facts fail to overcome the presumption of correctness which attaches to the appraised value.

2. That foreign value, as defined in section 402 of the Tariff Act of 1930, as amended and effective at the time of importation in 1952, is the proper basis of value for appraisement of such merchandise.

3. That such value is the appraised value.

Judgment will be entered accordingly.