I. Arditi *v.* United States   (No. 5106)*

---

*C.A.D. 818.

United States Court of Customs and Patent Appeals, March 20, 1963

*I. Arditi, pro se.*

*John W. Douglas,* Acting Assistant Attorney General, *Andrew P. Vance,* Chief, Customs Section, *Daniel I. Auster,* and *Mollie Strum,* for the United States.

[Oral argument February 5, 1963, by Mr. Arditi and Miss Strum]

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Jr., Associate Judges

ALMOND, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, Appellate Term (A.R.D. 141), relating to Reappraisement No. 282490–A. At the trial of this case, the record in *I. Arditi* v. *United States,* 37 Cust. Ct. 466, Reap. Dec. 8610, concerning another shipment of corned beef, was incorporated in the instant record.

The trial court found [1] as facts:

1. That the merchandise consists of canned corned beef, product of the Argentine, exported from Peru on May 9, 1952.

2. That, at the time of exportation, such or similar merchandise was freely offered, in Peru, for sale to all purchasers, in the ordinary course of trade, for home consumption.

3. That the merchandise was appraised at 240 Peruvian soles per case, net packed, on the basis of foreign value.

4. That the weight of evidence confirms the appraised value and does not prove the claimed value of 120 Peruvian soles.

The trial court concluded as a matter of law that the facts fail to overcome the presumption of correctness which attaches to the appraised value; that foreign value, as defined in section 402 of the Tariff Act of 1930, as amended and effective at the time of importation in 1952, is the proper basis of value for appraisement of such merchandise and that such value is the appraised value.

The Appellate Term, in affirming the decision and judgment of the trial court, expressly adopted the findings and conclusions of law as enunciated by that court.

---

[1] 46 Cust. Ct. 664, Reap. Dec. 9980.

The applicable statute, Section 402(c) of the Tariff Act of 1930, as amended, and effective at the time of the importation, reads as follows:

The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. (19 U.S.C. 1402(c).)

The record supports the conclusion, as to which there seems to be no dispute, that the proper basis of value was foreign value and that such value was used by the collector upon which to predicate the assessment of 240 Peruvian soles per case, net, packed. The appellant contends that the correct value was 120 soles per case, net, packed.

Section 2637 of Title 28 U.S. Code provides that an appeal to this court from the Customs Court, if the decision relates to ■ a reappraisement of merchandise, "shall be upon questions of law only."

As was said by this court in the case of *United States* v. *North American Asbestos Corp.*, 48 CCPA 153, 155, C.A.D. 783:

This being a reappraisement case, the only question before us is whether, as a matter of law, there is any "substantial evidence" to support the judgment below. It is not our province to weigh the evidence.

The foregoing makes it clear that our proper inquiry is limited to the ascertainment of whether or not the record before us affords "any substantial evidence" to support the judgment below. In so doing, we do not assay or weigh the evidence.

■ There is a statutory presumption that the finding of value by the appraiser is correct and the burden here rests on the appellant to prove that the appraised value is erroneous. If successful in this step, *he must go further and establish that some other dutiable value is* proper. This burden does not shift unless and until the importer shows prima facie such appraisement to be erroneous and establishes a different value in lieu thereof. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502.

To sustain his claim that the foreign value of the imported merchandise was 120 soles per case, appellant introduced in evidence certain documents which were received as appellant's exhibits 1 through 5.

The affidavit of Gustave Eguren, dated November 21, 1960, states "I recall" that some lots of beef, 50 cases and upwards, were sold for local consumption "at the price of 171.00 Soles per case, duty paid, and also at the price of 120.00 Soles per case CIF. Callao."

The affidavit of Jose Olcese, dated November 21, 1960, states that during the first half of 1952, Argentine corned beef packed 12 oz. tins 48 to the case was freely offered and sold, for consumption in Peru, in quantities of 30 cases or more at prices between 122 and 125 soles C.I.F. Callao, Peru, and that "during that period the usual wholesale quantities of Argentine Corned Beef were from 30 cases and upwards."

Another affidavit by Olcese, subscribed June 15, 1960, states that in April 1952, Mercantil del Pacifico S.A. offered him "12,000 cases of Argentine corned beef at the equivalent price in Soles of US Dollars 12 per case" and later at the equivalent of $10 per case, both offers delivered duty paid at Lima, Peru, and that he declined both offers because such "quantity could not be sold in the markets of Peru for many years to come." The record indicates that the rate of exchange in April 1952 was 15.32 soles per dollar.

The affidavit of Edgardo Otten, dated June 15, 1960, relates to an importation of 30 cases of corned beef at a cost price to him of 119.32 Peruvian soles per case as the landed cost in Peru.

The letter of Jose Dacal Perez subscribed and affirmed June 15, 1960, is to the effect that his firm imported 30 cases of corned beef from Argentina at a detailed cost "delivered in our warehouses" of 172 soles per case and "that said lot was sold by us to our clients on this market, in lots of one to ten cases, at the price of Soles 240.00, * * *."

It should be here observed that the Dacal letter is in confirmation of the information contained in appellee's Collective Exhibit B in the incorporated record that Argentine corned beef was sold in lots of 1 to 10 cases by the Dacal firm in the Peru market at 240 Peruvian soles per case. It is pertinent to note also that this was the price reflected in the appraisal as representing the home consumption value.

The record affords substantial support for the conclusion stated by Judge Donlon in Reap. Dec. 9980:

It is the usual wholesale quantities in the ordinary course of trade in Peru, and the market value or price for such quantities, that plaintiff is required to prove. If anything, plaintiff's proofs show no other *usual* wholesale quantity and price for such quantity, save the quantity and price stated in the Dacal affidavit. Other statements are merely conclusory, or reflect landed price from Argentina and not the price at which the merchandise actually was sold in Peru.

It seems clear to us that appellant's proof falls far short of making a prima facie case sufficient to rebut the presumption which obtains in favor of the correctness of the appraised value. Appellant's proof in substance relates to costs to Peruvian importers C.I.F. Callao exclusive of the Peruvian import duty of approximately 51 soles.

Pertinent in this connection is the statement of the Customs Court:

* * * When the foreign value statute speaks of the "price * * * at which such or similar merchandise is freely offered for sale for home consumption," it obviously has reference to the price at which the seller offers for sale the

right to consume the goods in the foreign market. It is difficult to see how such a right could be transferred without the payment of import taxes in the foreign market, and there is nothing in the record indicating that such taxes could be avoided in Peru. Consequently, the *cost* of the merchandise available for offer for sale for home consumption in Peru could hardly have been less than 170 soles per case, under Dacal's and Otten's own figures.

Appellant's assigned errors relate to questions involving the weight of the evidence. As hereinabove noted, it is not our province to weigh the evidence. Both by statute and judicial pronouncement, our sole proper function is to determine whether, as a matter of law, there is any substantial evidence to support the judgment below. It is our opinion that the appellant has not carried the burden of showing that the appraised value as determined by the collector is erroneous nor has he established the value which he claims. We decide, therefore, that the judgment of the Customs Court is supported by substantial evidence, and it is accordingly *affirmed*.